*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2003 FED App. 0039P (6th Cir.)
File Name: 03a0039p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WILEY DAVIS, JR.
    *Petitioner-Appellant,*

    *v.*

BETTY MITCHELL, Warden,
    *Respondent-Appellee.*

No. 00-4193

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 99-01649—James Gwin, District Judge.

Argued: October 31, 2002

Decided and Filed: February 4, 2003

Before: MERRITT, BOGGS, and MOORE, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Laurence E. Komp, Baldwin, Missouri, for
Appellant. Charles L. Wille, ATTORNEY GENERAL'S
OFFICE OF OHIO, CAPITAL CRIMES SECTION,
Columbus, Ohio, for Appellee. **ON BRIEF:** Laurence E.
Komp, Baldwin, Missouri, John Patrick Parker, Cleveland,
Ohio, for Appellant. Charles L. Wille, ATTORNEY

GENERAL'S OFFICE OF OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee.

MERRITT, J., delivered the opinion of the court, in which MOORE, J., joined.  BOGGS, J. (pp. 15-26), delivered a separate dissenting opinion.

————————

**OPINION**

————————

MERRITT, Circuit Judge.  Immediately following the trial court's instruction regarding mitigating circumstances, the trial judge in this death penalty case from Ohio gave the jury a unanimity instruction, stating, "Now, as you know, since this is a criminal case, the law requires that in order for you to reach a decision all 12 of you must be in agreement."[1]  In addition to this express unanimity instruction in close proximity to the instruction on mitigating circumstances, the trial judge gave the jury a so-called "acquittal-first" instruction stating that it must first analyze whether the elements allowing the death penalty were present, and only if

———————————————

[1] Just before this unanimity instruction, the judge told the jury about the verdict forms which the jury would have before it.  On each form the jury was told that there would be 12 "bars" for each of the 12 jurors to sign to carry out the unanimity requirement.  Immediately before the unanimity instruction quoted above, the trial judge gave the jury the following instruction with regard to the verdict form on a finding that the mitigating factors outweighed the aggravating factors, as follows:

> We, the jury in this case, being duly impaneled and sworn, do find that the Aggravating Circumstances which the defendant, Wiley Davis, Jr., was found guilty of committing are not sufficient to outweigh the Mitigating Factors present in this case beyond a reasonable doubt," and "We, the jury, recommend that the defendant, Wiley Davis, Jr., be sentenced to life imprisonment with parole eligibility after serving — and then down here there is an asterisk that says, 'Insert in ink either (20) or (30) full years of imprisonment," and, again, 12 signature bars.'" (J.A. at 242-44.)

The court's opinion as to what a reasonable Ohio jury would believe from the instructions in this case is, in my opinion, a gross libel on the intelligence and understanding of those jurors. I therefore respectfully dissent.

they were not present, should the jury move on to consider life imprisonment:

> Now, the procedure which you must follow in arriving at your verdict in the sentencing phase of the trial is set forth in Revised Code Section 2929.03 of the Revised Code of the State of Ohio.
>
> . . . .
>
> If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstances which Wiley Davis, Jr. was found guilty of committing outweigh the mitigating factors, if any, then you must return such finding to the Court.
>
> I instruct you as a matter of law that if you make such finding then you have no choice and must recommend to the Court that the sentence of death be imposed upon the defendant, Wiley Davis, Jr.
>
> On the other hand, if after considering all of the relevant evidence raised at trial, the testimony, other evidence, the unsworn statement of Wiley Davis, Jr. and the arguments of counsel, you find that the State of Ohio failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant, Wiley Davis, Jr., was found guilty of committing, outweigh the mitigating factors, then you will return your verdict reflecting your decision; *that is, you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors.*
>
> *In this event you will then proceed to determine which of the two possible life imprisonment sentences to recommend to the Court.*

The habeas petitioner argues that these two interconnected instructions – the unanimity instruction and the acquittal-first

instruction – constitute constitutional error under the Eighth Amendment because there was a reasonable likelihood that jurors would understand the instruction to mean that juror unanimity was required to mitigate the punishment from death to life. In upholding the death penalty in this case on direct appeal, the Ohio Supreme Court observed that these instructions "lacked clarity," suggesting that they could be misconstrued. In fact, there is a reasonable likelihood that the jury believed that it could not render a verdict in favor of life imprisonment rather than death unless the jury was unanimous with respect to its reasoning on the presence of mitigating factors and unless the jury was unanimous in rejecting the death penalty. Instructions that leave a jury with the impression that juror unanimity was required to mitigate the punishment from death to life imprisonment clearly violate the Eighth Amendment, and therefore the writ of habeas corpus must issue setting aside the death sentence.

*Facts and Procedural History*

On June 1, 1992, the Cuyahoga County Court of Common Pleas adopted the jury's recommendation and sentenced Wiley Davis to death for the brutal kidnaping and murder of Amy Perkins. Davis appealed his conviction to the Cuyahoga County Court of Appeals, which affirmed Davis's conviction but set aside that portion of his sentence that called for his placement in solitary confinement each year on the anniversary of Amy Perkins's death. In 1996, the Ohio Supreme Court affirmed both the murder conviction and sentence of death. The state court denied Davis's petition for post-conviction relief, and in 1998, the Cuyahoga County Court of Appeals affirmed the trial court's decision denying post-conviction relief. In 1999, the Ohio Supreme Court declined to exercise jurisdiction over Davis's appeal of that decision as one not involving any significant constitutional claim.

On August 23, 2000, the District Court for the Northern District of Ohio denied Davis's petition for a writ of habeas corpus. With respect to Davis's contention that the trial

The trial court then explained the verdict forms recommending life imprisonment. Again, the trial court truthfully told the jury that such a *verdict* required each juror to agree to it. It would have been a falsehood for the judge to tell the jury that it could return a verdict recommending life with parole in 20 years, or life with parole in 30 years, without each juror signing that form.

That is all that the judge did; and he was completely truthful and legally correct in so doing. This discussion occupies 60 lines of transcript at pages 1890-92.

Finally, having concluded the discussion of the verdict forms, the judge simply reinforced the correct statement of the law that a verdict had to be unanimous. This use of the words "to reach a decision all twelve of you must be in agreement" was 70 lines[1] and a recess away from the instruction on finding and weighing mitigating factors, as opposed to the 17-word distance that the Third Circuit found acceptable, and wildly different from the 7-word distance that the court found unconstitutional in *Frey* (albeit before AEDPA and thus not under the more stringent standard established by that law).

As nearly as I can gather, the court's complaint is that the judge did not instruct the jury to the effect that "any one of you can prevent the imposition of the death penalty on this defendant, simply by refusing to sign the death verdict. You can do so for any reason or for no reason." While that is a correct statement of existential truth, no case, and certainly no Supreme Court case, has come close to requiring that such an instruction be given.

---

[1] As is obvious from his final response (pages 12-13), Judge Merritt and I share a difference of opinion as to what is "the Ohio trial court's unanimity instruction regarding mitigating factors." As I carefully explain above, the instructions are given at pages 1869-75 and 1881-90. The accurate recitation of the verdict forms occurs at transcript pages 1890-92. A correct reading of a constitutionally unexceptionable verdict form is not "an instruction."

circumstances. Again, this court has held repeatedly that requiring unanimity as to the results of the weighing process does not offend due process. *Roe*, 2002 WL 31426248 at *5; *Coe*, 161 F.3d at 338.

It is difficult to say what the court's argument is at all. Its conclusion is that there is an "inescapable likelihood" that the jury in this case "understood the instructions to require unanimity in both its ultimate and interim conclusions . . . ." Page 12. However, there are only two places where a unanimity requirement has been held to be unconstitutional: (1) to reject the death penalty, and (2) as to the presence of a mitigating factor. Reviewing the instructions in total, there is not a word that would lead any reasonable juror to understand that unanimity was required in these two instances. The court would require that trial courts spell this out. Indeed, Ohio now requires its trial courts to instruct juries that one juror has the ability to block the death penalty. However, that is a matter of state law, not federal law. In fact, both this court and the Supreme Court "[have] chastised such instructions as encouraging deadlock and undermining the strong governmental interest in unanimous verdicts." *Roe*, 2002 WL 31426248 at *5 (quoting *Scott*, 209 F.3d at 877); *Scott*, 209 F.3d at 877 (citing *Jones v. United States*, 527 U.S. 373, 382-84 (2000)).

The trial court correctly instructed the jury on mitigating and aggravating factors, in accordance with Ohio law at the time and with our court's cases, both before and since. These instructions occupied pages 1869-75 and 1881-90 of the transcript.

The trial court then began to explain the actual verdict forms. As is required by law, it noted that a verdict recommending death required unanimity as to the existence of aggravating factors, unanimously found by the jury (which it had already done, in its penalty phase determinations), that, in the opinion of each juror, outweighed the mitigating factors. The trial court had previously instructed the jury on finding mitigating factors, with no unanimity mentioned.

court's instruction failed to notify each juror of his or her right to unilaterally prevent a death penalty recommendation, the district court held that it was reasonable for the Ohio Supreme Court to conclude that the trial court's instructions "when read as a whole, adequately informed the jury of the proper manner to deliberate and choose a death penalty recommendation." *See Davis v. Mitchell*, 110 F. Supp. 2d 607, 624 (N.D. Ohio 2000). This Court has granted a certificate of appealability on four of Davis's claims, one of which is his claim that the trial court's instruction prevented jurors from giving effect to mitigation.

*Analysis*

The developing law regarding the balancing of mitigating factors against aggravating factors in death penalty cases is of relatively recent vintage and many questions about its application remain unanswered. Thirteen years before the Supreme Court decided *Furman v. Georgia*, 408 U.S. 238 (1972) (holding death sentences imposed under statutes that left juries with untrammeled discretion to impose or withhold the death penalty violative of the Eighth and Fourteenth Amendments), the drafters of the American Law Institute's 1962 Model Penal Code proposed the balancing of statutorily specified aggravating and mitigating circumstances as a method to restrain unguided discretion in the capital sentencing process. *See* American Law Institute, Model Penal Code § 201.6 ( Tent. Draft No. 9, 1959) (eventually adopted as § 210.6 of the 1962 Model Penal Code). Although the drafters did not elaborate on any particular method for weighing the two sets of circumstances, they sought to guide the discretion of jurors by requiring them to find that, in light of the statutorily defined mitigating circumstances and any other facts deemed relevant, "there are no mitigating circumstances sufficiently substantial to call for leniency." Model Penal Code § 210.6(2) (1962). Nor was it clear in these proposals when unanimity among jurors should be required at any given stage of the proceedings, except that unanimity would be required for the imposition of the death sentence. *See* Model Penal Code § 201.6(2) (alternative

formulation), at 60 & commentary at 78-79 (Tent. Draft No. 9 1959); Model Penal Code § 210.6(2) (1962).  After *Furman* was decided in 1972, many states incorporated aspects of the Model Penal Code in their statutes reinstating the death penalty.  These states adopted, with varying degrees of modification, the Code's aggravator-mitigator dual standard.  In *Gregg*, the Supreme Court approved the Code's balancing standard as a general solution to the Eighth Amendment problem of uncertain, standardless state laws found invalid in *Furman*.  *See Gregg v. Georgia*, 428 U.S. 153, 193-195 & nn.44-45 (1976).

In 1994, Congress enacted the Federal Death Penalty Act using this dual standard.  That Act states  that "the finder of fact  shall  consider  any  mitigating  factor" raised by the defendant in deciding whether to impose the death penalty and that such

> [a] finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established.

18 U.S.C. § 3593(d).  Thus under the Federal Death Penalty Act,

> [n]ot only is the burden of persuasion different for aggravating and mitigating factors, the unanimity requirement that exists for aggravating factors does not exist with respect to mitigating factors.  Any one or more jurors may find the existence of a mitigating factor and may then consider that factor in weighing the aggravating and mitigating factors even though other jurors may not agree that the particular mitigating factor has been established.  This weighing decision must be made by each juror giving individual consideration to the aggravating factors unanimously found by all of the

This court has held that a trial court may instruct the jury that it must be unanimous in finding an aggravating factor, and may be silent as to the lack of a unanimity requirement in finding mitigating circumstances.  *Kordenbrock v. Scroggy*, 919 F.2d 1091, 1120 (6th Cir. 1990) (en banc) (Judge Kennedy, announcing the holding of the court with respect to the  jury  instructions  on  unanimity).    The  court  in *Kordenbrock* stated that since the trial court announced a unanimity requirement as to aggravating factors, but was silent as to mitigating factors, "it cannot be reasonably inferred that silence as to finding a mitigating factor would likely cause the jury to assume that unanimity was also a requirement.  Indeed it would indicate the opposite."  919 F.2d at 1121.  Judge Merritt wrote, *contra* to the majority holding on this issue, that "the verdict of death may not have been imposed had they understood that one juror could block the death sentence if he or she believed there were sufficient mitigating circumstances." *Id.* at 1110.  This is essentially the same position he takes in the instant case.  However, as the court held in *Kordenbrock*, it is not constitutionally required that the jury be so instructed.

The court states that the instruction "you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors" was followed "[i]mmediately thereafter" by the instruction "since this is a criminal case the law requires that in order for you to reach a decision all twelve of you must be in agreement." Page 11.  In fact, these two instructions are separated by about 70 lines of the transcript, and, additionally, by a recess taken by the court because the verdict forms were not in order.  *Compare* Transcript p. 1889, line 18 *with* Transcript p. 1892, line 18.

### C.  Instruction on unanimous verdict

The court also finds it objectionable that the verdict forms reflected a unanimity requirement in finding that the aggravating circumstances do not outweigh the mitigating

unanimity was required.  Any reasonable juror would understand that where unanimity is not specifically instructed, those decisions should be made independently.

The state courts never reached the issue of any alleged unanimity requirement regarding the mitigating factors, as this claim was never presented to the state courts, the district court, nor to this court.  But in failing to strike down this instructional system, the state court did not unreasonably apply Supreme Court precedent.

The court likens this case to *Frey v. Fulcomer*, 132 F.3d 916 (3d Cir. 1997).  The court in *Frey* found particularly objectionable a portion of a sentence in the jury instructions that read "if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance . . . ."  *Id.* at 923.  It was the propinquity, in the same sentence, within seven words, of "unanimously" and the mitigating circumstances clause that led the court to conclude that a juror might believe that a unanimous finding was required as to mitigating circumstances. *Ibid.*  However, the court in *Frey* distinguished the instructions from another set of instructions that it had found unobjectionable in *Zettlemoyer v. Fulcomer*, 923 F.2d 284 (3d Cir. 1991).  In *Zettlemoyer*, the court found that the instructions only required "unanimity in the ultimate conclusion, and not in the interim findings leading to that conclusion." *Frey*, 132 F.3d at 923.  The separation between "unanimously" and the mitigating circumstances clause in *Zettlemoyer* was seventeen words, even though it was still in the same sentence. *Ibid.* Here, the court also contends that the absence of an instruction notifying the jury that a unanimous finding is not required as to mitigating circumstances makes this case like *Frey*.  In fact, the court in *Frey* specifically stated that "the absence of such an express statement is not dispositive" and stated that such an instruction is only one means that a trial court could use to clarify its instructions to the jury.  *Id.* at 923 n.5.

jurors and such mitigating factors as may be found by each juror.[2]

This provision of the Act was first adopted on the Senate floor by an amendment offered by Senator D'Amato to an earlier version of the federal death penalty bill and then later adopted in a reconciliation bill after different versions of the bill were sent to a conference committee.  The reason given for adopting this language in the Federal Death Penalty Act of 1994 was explained by Senator D'Amato on the Senate floor when he originally offered the amendment in 1988:

> Mr. President, this amendment brings us into conformity with the Tuesday Supreme Court decision in *Maryland* versus *Mills*.  Basically, it says that you must have a unanimous decision by a jury as it relates to the imposition of the death penalty.  Even if one juror says there was mitigating circumstances of any sort, the death penalty cannot be imposed.  It makes this very clear.  That is what this language does.  It brings us in conformance with that decision.  I hope we can accept it without the necessity of going through a debate and rollcall vote.

134 Cong. Rec. 14,103-04 (1988) (statement of Sen. D'Amato regarding Amendment 2343 to S. 2455).

We agree that this treatment of mitigating factors set out by Congress in § 3593 of the Federal Death Penalty Act is required by the Eighth Amendment.  In *Mills v. Maryland*,

---

[2] *United States v. McVeigh*, 96-CR-68, 1997 WL 312609, at *42 (D. Colo. June 12, 1997) (official transcript of trial court's instructions to the jury in federal death penalty case); *see also United States v. Jones*, 527 U.S. 373, 392 n.10 (1999) ("'A finding with respect to a mitigating factor may be made by any one or more of the members of the jury, and any member who finds by a preponderance of the evidence the existence of a mitigating factor may consider such factor established for his or her weighing of aggravating and mitigating factors regardless of the number of other jurors who agree that such mitigating factor has been established.'") (quoting the trial court's instructions).

486 U.S. 367 (1988), and *McKoy v. North Carolina*, 494 U.S. 433 (1990), the Supreme Court held unconstitutional any requirement that "prevents the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find." *McKoy*, 494 U.S. at 435.

> Rather, *Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death. This requirement means that, in North Carolina's system, each juror must be allowed to consider all mitigating evidence . . . whether aggravating circumstances outweigh mitigating circumstances, and whether the aggravating circumstances, when considered with any mitigating circumstance, are sufficiently substantial to justify a sentence of death. Under *Mills*, such consideration of mitigating evidence may not be foreclosed by one or more jurors' failure to find a mitigating circumstance . . . .

*Id.* at 443.

The reason that aggravating factors must be found unanimously is that they are the elements of the murder offense that make the defendant death eligible. *See Ring v. Arizona*, 122 S. Ct. 2428, 2443 (2002) (holding that because Arizona's enumerated aggravating factors operate as the functional equivalent of elements of the offense, the Sixth Amendment requires that they be found by a jury). All of the elements of a criminal offense must be found by a jury unanimously as a matter of constitutional criminal procedure, *see Richardson v. United States*, 119 S. Ct. 1707, 1710 (1999), particularly all elements that make a defendant death eligible, *see Ring*, 122 S. Ct. at 2431.

Mitigating factors, on the other hand, are not viewed as elements of the crime but rather as evidence relevant to a defendant's character or record or other circumstances of the offense that might lead a sentencer to decline to impose the death sentence. *See McCleskey v. Kemp*, 481 U.S. 279, 304

judge then instructed the jury that if the state failed to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors, then they were to return a verdict reflecting this finding. Transcript, p. 1889.

Nowhere in the instructions did the judge state, or even imply, that jurors were restricted to considering mitigating factors that all the jurors had agreed were present. Such an instruction would violate *McKoy v. North Carolina*, in which the Supreme Court found unconstitutional any requirement that "prevents the jury from considering, in deciding whether to impose the death penalty, any mitigating factor that the jury does not unanimously find." 494 U.S. at 435. However, that is all that *McKoy* says. Nowhere does it state that silence in instructions on the lack of a unanimity requirement for mitigating circumstances violates the Eighth Amendment.

The instructions in this case are very similar to those found unobjectionable in *Coe* and *Roe*. In *Coe,* the court found that nothing in the instructions could reasonably lead a juror to believe that unanimity was required as to the presence of a mitigating factor. The court stated that the instructions "require[d] unanimity as to the results of the *weighing*, but this is a far different matter than requiring unanimity as to the *presence* of a mitigating factor." 161 F.3d at 338. As in the instructions here, it was clear that the unanimity requirement applies to the weighing process, and not the presence of a mitigating factor.

The trial court here instructed the jury that "[i]t is not only the quantity of the aggravating circumstances versus the quantity of mitigating factors which is to be the basis of your decision. It is the quality or importance of the mitigating factors and the aggravating circumstances which must be considered." Transcript, p. 1887. This strongly implies that each juror was to make his or her own independent judgment regarding each factor. While the jury was instructed on the unanimity requirement in finding aggravating factors, there was no parallel instruction regarding mitigating factors. The jury was specifically instructed as to those decisions in which

The Ohio Supreme Court's decision was not an unreasonable application of *Mills* or *McKoy*. The court's conclusion to the contrary squarely contradicts binding Sixth Circuit precedent.

## B. Lack of unanimity required for mitigating circumstances

The court is also troubled because "the jury was never told, either expressly or impliedly, that individual jurors may consider mitigating circumstances in the weighing process regardless of the lack of agreement with other jurors as to the presence of that factor." Pages 11-12. This also purportedly violates the dictates of *Mills*.

The Supreme Court in *Mills* vacated the petitioner's death sentence and remanded the case to the Maryland Court of Appeals for resentencing. The Court took issue with the structure of the Maryland sentencing scheme. In that scheme, the verdict forms provided to the jury listed each aggravating circumstance the prosecution was attempting to prove. The jurors then collectively had to write "yes" or "no" next to each factor, indicating whether they unanimously believed that the prosecution had proved each aggravating factor beyond a reasonable doubt. A similar form was presented to the jury for mitigating factors. After filling out the forms, the jurors would proceed to the weighing stage, at which time they would decide, unanimously, whether the aggravating factors outweighed the mitigating factors. The Supreme Court concluded that the risk was too great that, in Maryland, a juror would believe that in order for a mitigating factor to be considered in the weighing process, that it would have to be unanimously found present.

This is a far cry from the situation presented in this case. There is no indication anywhere in the instructions that each mitigating factor had to be agreed to unanimously. The judge instructed the jury that they were to weigh the evidence presented and determine whether the aggravating factors were sufficient to outweigh "any mitigating factor or factors you find that are present in this case." Transcript, p. 1888. The

(1987). Accordingly, a state may not require unanimity in finding mitigating factors. Such a requirement "impermissibly limits jurors' consideration of mitigating evidence." *McKoy*, 494 U.S. at 444. In fact, as *Mills* and *McKoy* hold, any requirement that mitigating factors must be found unanimously is incoherent. *See Mills*, 486 U.S. at 400; *McKoy*, 494 U.S. at 442-43. A unanimity requirement on mitigating factors would mean that, if aggravating factors have been found by the jury, one or more jurors who — in disagreement with other jurors — find no mitigating factor, or find different mitigating factors, or find that the aggravating factors do not outweigh mitigating factors found by some (but not all) of the jurors, or find that no mitigating factor outweighs aggravating factors, could still produce a death verdict or a hung jury, depending on how state law treats the disagreement. Thus, in order for Eighth Amendment law on mitigating factors to be coherent and capable of judicial administration without serious confusion, a capital jury must understand that, in the words of the Federal Death Penalty Act, "a finding with respect to a mitigating factor may be made by one or more members of the jury."

With that background about the development of Eighth Amendment law regarding mitigating factors, we are now in position to apply these principles to the facts of the instant case. Our inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Jones v. United States*, 527 U.S. 373, 390 (1999); *see also Boyde v. California*, 494 U.S. 370, 380 (1990).

Ohio's death penalty statute requires that in order for a jury to recommend a sentence of death, it must unanimously find that the aggravating circumstances outweigh any mitigating circumstances present in the case. In the absence of a unanimous finding that death is appropriate, the jury must recommend imprisonment for a unanimously agreed-upon

specified term.[3]   Although the Supreme Court has indicated that the weighing of aggravating and mitigating circumstances in death penalty cases is not itself constitutionally required, once a state has adopted that method of narrowing the class of persons eligible for the death penalty and providing for individualized juror consideration of the appropriateness of the death penalty in a particular case, the Eighth Amendment requires that jurors not be precluded from giving effect to the mitigating evidence by an instruction requiring unanimity as to the presence of mitigating circumstances. *See Mills*, *supra*. Any instruction requiring that a jury must first unanimously reject the death penalty before it can consider a life sentence likewise precludes the individual juror from giving effect to mitigating evidence and runs afoul of *Mills*.

The Ohio Supreme Court has recognized that under Ohio's death penalty statute, a sole juror can prevent the death penalty if he or she individually finds that mitigating circumstances are present in the case and does not agree that the aggravating circumstances outweigh the mitigating circumstances. *See Ohio v. Brooks*, 661 N.E.2d 1030, 1042

---

[3] Section 2929.03(D)(2) of the Ohio Revised Code provides in relevant part:

> Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to [life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment].

---

Supreme Court from finding that the jurors in the instant case were adequately instructed that unanimity in rejecting the death penalty was not required before they could consider the life sentences.

Indeed, the instructions in this very case, *State v. Davis*, were used by both the majority and the dissent in *Henderson v. Collins*, 262 F.3d 615 (6th Cir. 2001), to demonstrate permissible instructions. Notably, the dissent in *Henderson* (favoring the reversal of a death sentence) discussed the Ohio Supreme Court's consideration of further instructions given to the jury in this case. The dissent notes that after the judge instructed the jury regarding the death penalty and the life sentences, the judge went on to caution the jurors:

> Now, your initial conduct upon entering the jury room, again, is a matter of importance. You should consult with each other; consider each other's views, and deliberate with an objective of reaching an agreement, if you can do so, without doing violence to your individual conscience and good judgment.
>
> You should do so only after a discussion and a consideration of the case with your fellow jurors.
>
> Remember, each of you is equal in the jury room, and you shouldn't hesitate to change your opinion if convinced by your fellow jurors that you are wrong.
>
> However, do not surrender any honest conviction in order to be congenial, or to reach a verdict solely of the belief of the other jurors.

*Id.* at 627 (Clay, J., dissenting) (citing *Davis*, 666 N.E.2d at 1109) (added emphasis omitted). These instructions track almost exactly the Ohio pattern jury instructions regarding "Conduct while deliberating." Ohio Jury Instructions § 413.70. The dissent in *Henderson* noted that the Ohio Supreme Court reviewed all the instructions and concluded that each juror was aware of his or her ability to prevent a death penalty recommendation. *Ibid.* (Clay, J., dissenting).

case." Page 11. However, this circuit has held that there is no constitutional requirement that a judge inform the jury as to the effect of a failure to be unanimous in reaching a verdict. *See Coe,* 161 F.3d at 339-40. In *Jones v. United States*, 527 U.S. 373 (1999), the Supreme Court held the same thing in the context of the Federal Death Penalty Act. In *State v. Brooks*, 661 N.E.2d 1030 (Ohio 1996), the Ohio Supreme Court held that Ohio state courts must instruct the jury that a solitary juror may prevent imposition of the death penalty. *Id.* at 1040-42. This rule is prospective, and was not in force when Davis was sentenced to death. Regardless, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The court appears to impose this rule on Ohio courts retroactively and institute a requirement that jurors be apprised of the effect of their individual power to deadlock the jury.

The contrast between the instructions at issue here, and the instructions in *Brooks*, is illuminating. In *Brooks*, the judge stated to the jury as follows: "You are now required to determine unanimously that the death penalty is inappropriate before you can consider a life sentence." *Id.* at 1040. Such an instruction is thought to violate *Mills* and *McKoy v. North Carolina*, 494 U.S. 433 (1990) because it may lead a juror to believe that the sufficiency of mitigating factors has to be found unanimously; and also may lead a juror to believe that unless all jurors are disposed to grant mercy, that a defendant must be sentenced to death.

The very same court that decided *Brooks* stated that the instructions in Davis's sentencing phase were distinguishable from those in *Brooks* because the jury was never instructed that it must unanimously reject the death penalty before it could consider the life sentences. *Davis*, 666 N.E.2d at 1109. The majority correctly notes that the court in *Davis* stated that the instructions "lack[ed] the clarity of the model instruction contemplated in *Brooks*." *Ibid*. However, there is no constitutional requirement "to be a model of clarity"; moreover, the lack of clarity did not preclude the Ohio

(Ohio 1996). The resulting non-unanimous jury (as to the death penalty) must nevertheless return a unanimous verdict as to which of the sentences of imprisonment should be imposed.

Given the requirement of unanimity as to the jury's ultimate recommendation of either death or life under Ohio law, it is not surprising that the unarticulated but constitutionally required non-unanimous mechanism that will prevent a recommendation of death is obscured to such an extent that it cannot even be said to be implied by the instructions in this case. Instead of instructing the jury that it need not be unanimous in rejecting the death penalty, the trial judge in this case told the jury that in order to return a verdict for life imprisonment, "you must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors." Immediately thereafter, the Court instructed that "since this is a criminal case the law requires that in order for you to reach a decision all 12 of you must be in agreement." The verdict form likewise reflected a unanimity requirement in finding that the aggravating circumstances do not outweigh the mitigating circumstances, setting out twelve signature lines under the statement, "We, the jury . . . do find that the Aggravating Circumstances which the defendant, Wiley Davis, Jr., was found guilty of committing are not sufficient to outweigh the Mitigating factors present in this case beyond a reasonable doubt." This instruction, combined with the jury verdict form, not only "could" but by its plain language "would" lead a reasonable juror to conclude that the only way to get a life verdict is if the jury unanimously finds that the aggravating circumstances do not outweigh the mitigating circumstances, an entirely different instruction from one that clearly informs the jurors that a life verdict can be rendered by a jury that has not first unanimously rejected the death penalty. Further adding to the confusion, the jury was never told, either expressly or impliedly, that individual jurors may consider mitigating circumstances in the weighing process regardless of the lack of agreement with other jurors as to the presence

of that factor. In sum, the silence in these instructions on the lack of unanimity required for mitigating circumstances, the improper "acquittal-first" instruction, and the unqualified instruction, "Now, as you know . . . the law requires that in order for you to reach a decision all 12 of you must be in agreement"—would have led a reasonable jury to apply an unconstitutional standard of unanimity at all stages in the deliberative process.

The error in the present case is approximately the same as the error described by Judge Becker in *Frey v. Fulcomer*, 132 F.3d 916 (3d Cir. 1997). In that case, the Court of Appeals for the Third Circuit vacated a death sentence as violating *Mills* where "the relevant portion of the jury charge emphasiz[ed] the importance of a unanimous finding, using the phrase frequently and in close proximity -- within seven words of -- the mitigating circumstances clause," without explaining that unanimity is not required in consideration of mitigating evidence. *Id.* at 923. Here, as there, the trial court's instructions are silent as to the different unanimity requirements for aggravating and mitigating circumstances, making no mention of the individual juror's power to prevent the death penalty by giving effect to mitigating circumstances absent the agreement of the other jurors regarding the presence of those mitigating circumstances. Nor do they make clear that the jury need not be unanimous in rejecting death in order to render a verdict for life imprisonment. The inescapable likelihood in this case that the jury understood the instructions to require unanimity in both its ultimate and interim conclusions violates *Mills*.

Our dissenting colleague has failed to describe the record correctly with respect to the Ohio trial court's unanimity instruction regarding mitigating factors. In his dissenting opinion immediately following this opinion, he says that the Ohio trial court's unanimity instruction — "since this is a criminal case, the law requires that in order for you to reach a decision all 12 of you must be in agreement" — is "seventy lines and a recess away" from the instruction on "weighing

---

a single juror to prevent a death sentence by creating a deadlock. However, the Constitution does not forbid a jury from considering a death sentence before considering a life sentence. This issue was squarely addressed by this court in *Coe v. Bell*, 161 F.3d 320, 339-40 (1998). *See also Roe v. Baker*, 2002 WL 31426248, *4-*6 (6th Cir. Oct. 31, 2002); *Henderson v. Collins*, 262 F.3d 615, 621-22 (6th Cir. 2001) (discussing instruction in considering constitutionality of subsequent *Allen* charge); *Scott v. Mitchell*, 209 F.3d 854, 873-76 (6th Cir. 2000).

The relevant Ohio statute provides:

If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

Ohio Rev. Code Ann. § 2929.03(D)(2) (1994). The very structure of the statute implies that jurors may first consider the death penalty. It is clear that a unanimous finding is required in order to recommend death; however, the language "[a]bsent such a finding" implies that a unanimous finding is *not* required in order to reject the death penalty. Yet, unanimity among the jurors is required in order to impose one of the life sentences. *State v. Jenkins*, 473 N.E.2d 264, 307 (Ohio, 1984) ("we conclude in returning a sentence of life imprisonment under R.C. 2929.03(D)(2), the jury's verdict must be unanimous").

The court claims that the "unarticulated but constitutionally required non-unanimous mechanism that will prevent a recommendation of death is obscured to such an extent that it cannot even be said to be implied by the instructions in this

The court also states that "[t]he habeas petitioner argues that these two interconnected instructions – the unanimity instruction and the acquittal-first instruction – constitute constitutional error under the Eighth Amendment because there was a reasonable likelihood that jurors would understand the instruction to mean that juror unanimity was required to mitigate the punishment from death to life." Pages 3-4.

The court does not cite the place where Davis makes such an argument, and I can find none. The court instead has conflated several arguments in order to avoid precedent from this circuit that would defeat any one of them alone.

## A. "Acquittal-first" instruction

The Ohio Supreme Court rejected Davis's argument that the instruction given by the judge during his sentencing phase was an improper "acquittal-first" instruction that would warrant reversal of his capital sentencing. *State v. Davis*, 666 N.E.2d 1099 (Ohio 1996). After reviewing all of the instructions given in the case, the court concluded that "it is clear that the jury was adequately informed that unanimity was required to return a death penalty recommendation. Each juror was made aware that he or she could prevent a death penalty recommendation by finding that the aggravating circumstances in the case do not outweigh the mitigating factors . . . ." *Id.* at 1109. The question before this court is whether the Ohio Supreme Court unreasonably applied the correct governing legal principle, established in *Mills v. Maryland*, 486 U.S. 367 (1988), that "the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence . . . ." *Id.* at 374-75 (citing *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986) (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 114 (1982)) (internal quotes and added emphasis omitted)).

The objection to "acquittal-first" instructions is not to the order of consideration, but to the possibility that a juror may be led to believe that the jury must first unanimously reject death before considering a life sentence, rather than allowing

mitigating factors" and is unrelated to mitigating factors. This is simply wrong, as the record itself demonstrates.

As to aggravating and mitigating factors, the trial judge instructed the jury that they must consider and sign one of two verdict forms. The first form he read to them was the verdict form for imposing the death penalty. He then said immediately:

And there are twelve signature bars, where you would sign that [verdict form], if that was your verdict.

The second verdict [form] as to Count One [acquittal of the death penalty] says:

"We, the Jury in this case, being duly impaneled and sworn, do find that the Aggravating Circumstances which the defendant, Wiley Davis, Jr., was found guilty of committing are not sufficient to outweigh the Mitigating Factors present in this case beyond a reasonable doubt" and "We, the Jury, recommend that the defendant, Wiley Davis, Jr. be sentenced to life imprisonment with parole eligibility after serving" — and then down here there is an asterisk that says, "Insert in ink either twenty (20) or thirty (30) full years of imprisonment" *and*, *again*, *twelve signature bars* [for each of you to sign]. (Emphasis added.)

Immediately following this instruction regarding their finding that the aggravating circumstances "are not sufficient to outweigh the mitigating factors" the court says:

Now, as you know, since this is a criminal case the law requires that in order for you to reach a decision all twelve of you must be in agreement.

It is hard to conceive how this instruction concerning unanimity and the need for each juror to sign one of the twelve bars could be anymore plain that the jury must be unanimous if it finds that one or more mitigating factors

outweighs the aggravating circumstances. This instruction — in the words of *Williams v. Taylor*, 529 U.S. 362, 413 (2000) — is clearly "opposite to that reached by [the Supreme] Court on a question of law" in the *Mills* and *McKoy* cases discussed above. Our dissenting colleague is simply unable to get around the clarity of the erroneous instructions that the jury must be unanimous as to mitigators and that each juror must so attest by signing a form demonstrating unanimity. The "acquittal first" instruction and absence of any other instruction which conflicts with the requirement of unanimity on mitigators would simply reinforce in the mind of each juror that unanimity was required for both aggravators and mitigators.

Accordingly, the judgment of the district court is reversed and the case remanded with instructions to issue the writ of habeas corpus, unless the State of Ohio conducts a new penalty proceeding within 180 days after remand. All other issues in the case raise claims of error in the sentencing phase of the case, and as such, are pretermitted in light of our decision to issue the writ as to this phase of the case.

_____

**DISSENT**

_____

BOGGS, Circuit Judge, dissenting. Petitioner Davis's claim for habeas relief is reviewed by this court pursuant to the dictates of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254(d). As Davis does not challenge any of the state court's factual findings, this court may grant the writ only "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts . . .," or "if the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The court states that "[i]n sum, the silence in these instructions on the lack of unanimity required for mitigating circumstances, the improper 'acquittal-first' instruction, and the unqualified instruction, 'Now, as you know . . . the law requires that in order for you to reach a decision all 12 of you must be in agreement' – would have led a reasonable jury to apply an unconstitutional standard of unanimity at all stages in the deliberative process." Page 12. The court thus attacks three parts of the instruction process: (1) what it calls an "acquittal-first" instruction; (2) the failure to give an explicit instruction that unanimity is *not* required for any individual juror to find a mitigating factor; and (3) the giving of a standard instruction that the return of a formal verdict requires jury unanimity. Each of these three aspects of the instructions is unexceptionable, and the action of the Ohio Supreme Court in upholding these instructions certainly does not constitute an unreasonable application of any clearly established precedent of the United States Supreme Court. I will discuss each of these three aspects in turn.