RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0323p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DONALD WILLIAMS,

> *Petitioner-Appellee/*
> *Cross-Appellant,*

Nos. 04-3515/3585

*v.*

CARL S. ANDERSON,

> *Respondent-Appellant/*
> *Cross-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 95-02643—Solomon Oliver, Jr., District Judge.

Argued: March 14, 2006

Decided and Filed: August 28, 2006

Before: SILER, MOORE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Matthew C. Hellman, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Heather L. Gosselin, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for Appellant. Timothy F. Sweeney, LAW OFFICE OF TIMOTHY FARRELL SWEENEY, Cleveland, Ohio, John B. Gibbons, Cleveland, Ohio, for Appellee.

CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. SILER, J. (pp. 23-24), delivered a separate concurring opinion.

_____

**OPINION**

_____

CLAY, Circuit Judge. Respondent, Carl S. Anderson, a warden in the State of Ohio, appeals a judgment of the United States District Court for the Northern District of Ohio, granting Petitioner, Donald Williams, a conditional writ of habeas corpus and vacating Petitioner's death sentence. Petitioner cross-appeals the district court judgment, arguing that the district court should have vacated not only his sentence, but also his conviction. For the reasons set forth below, we **AFFIRM**

1

the order of the district court, vacating Petitioner's death sentence, but upholding his conviction for aggravated murder.

# I.
# BACKGROUND

On July 21, 1984, Petitioner was convicted of hiring James Earl Darby to murder Archie Moore in violation of Ohio Revised Code §§ 2903.01(A) and 2929.04(A)(2). The syllabus to the Supreme Court of Ohio's decision accurately summarizes the facts that came forth at trial as follows:

> Shortly before December 1982, three men broke into the apartment of Merle A. Berry in order to commit a robbery. One of Berry's young daughters jumped from the apartment's second-story window to find Berry and tell her about the robbery. The daughter identified Moore as one of the robbers. Berry later told some friends that she was "going to kill that damn Archie for making my baby jump out the window."
>
> Later, in December, a gunman robbed Berry of some money and the drugs she was selling for [Petitioner], Donald Williams. [Petitioner] learned that Moore and another man had sent the gunman to rob Berry.
>
> Shortly before Christmas, [Petitioner] and Berry were driving in his car when they saw Moore on the street corner. [Petitioner] shot at Moore with a pistol, but missed. That day, one of Moore's brothers received a phone call in which [Petitioner] threatened Moore. [Petitioner] also told another of Moore's brothers that he had a contract out on Moore. Thereafter, Moore kept a low profile by staying inside his mother's house.
>
> James Earl Darby testified that [Petitioner] approached a group of people on the street one day and asked whether anyone wanted to make $500. Understanding that this was a solicitation for someone to kill Moore, Darby accepted the offer. [Petitioner] then provided Darby with the murder weapon and a down payment consisting of $200 and some drugs. Later, Darby asked for, and [Petitioner] agreed to give him, more money because of the time and risk involved in getting Moore out of his mother's house. Darby informed [Petitioner] that because Moore trusted Darby, he would be able to coax Moore out of the house.
>
> On Christmas Eve, Darby went to see Moore and managed to convince him to leave the house by promising that he would act as Moore's protector. As they walked through a vacant lot, Darby spun around and shot Moore in the head, causing Moore to fall to the ground. Darby then shot Moore four more times in the face, killing him.
>
> Afterward, Darby threw the gun away and went to Berry's apartment to hide and to wait for [Petitioner]. When [Petitioner] arrived, Darby told him the job was done. [Petitioner] told Darby that he would have to confirm the killing before he paid Darby the rest of the money. Witnesses at the apartment heard [Petitioner] state he had Moore killed as a Christmas present for Berry. The next day, [Petitioner] confirmed Moore's death and paid Darby with more drugs and money.

*State v. Williams*, 528 N.E.2d 910, 913 (Ohio 1988).

On July 23, 1984, two days after the jury convicted Petitioner of murdering Moore, the Ohio trial court conducted a brief sentencing hearing. There, Petitioner's attorney, Thomas Shaughnessy, waived his opening statement, and declined to offer any mitigating evidence. Instead, Petitioner

made a brief statement to the jury, whereafter Shaughnessy proceeded to give a long, rambling closing, in which he arguably presented a case for residual doubt. The jury sentenced Petitioner to death that same day.

Petitioner appealed his conviction and sentence to Ohio's Eighth District Court of Appeals. The Eighth District Court affirmed his conviction. Thereafter, Petitioner obtained new counsel, and appealed his conviction and sentence to the Ohio Supreme Court. A divided Ohio Supreme Court affirmed Petitioner's conviction and sentence. Three of the four justices would have vacated Petitioner's sentence based on the cumulative effect of numerous evidentiary errors on Petitioner's sentence, including the admission of prosecution witness Kim Berry's testimony. Kim Berry, the twelve year old daughter of Merle Berry testified that she had participated in some of Petitioner's drug sales. Although all seven justices determined that the admission of Kim Berry's testimony violated Ohio's Rules of Evidence, the majority determined that its admission was harmless and issued a decision denying Petitioner's appeal.

After the Supreme Court of Ohio issued its decision denying Petitioner's appeal, Petitioner moved for rehearing. The Supreme Court of Ohio denied the motion, and Petitioner filed a petition for a writ of certiorari with the United States Supreme Court. The Supreme Court denied certiorari.

Following the conclusion of his direct appeals process, Petitioner filed two state post-conviction actions and a *Muraham* action. The first post-conviction action raised forty-five grounds for relief, including ineffective assistance of counsel, the cumulative effect of numerous evidentiary errors, and the constitutionality of the trial court's jury instruction on Ohio's death penalty law. After the trial court denied Petitioner relief, Petitioner filed a *Muraham* action, seeking to reopen his direct appeal on the ground that his appellate counsel was ineffective. That too was denied, and the Ohio Supreme Court declined to review either action. *State v. Williams*, No. 79-448, slip op. at 1 (Ohio April 27, 1994); *State v. Williams*, 65 Ohio St. 3d 1479 (1992). Petitioner then filed a second post-conviction action. In the second post-conviction action, Petitioner requested relief on the ground that he had discovered new evidence, establishing that his trial judge was biased in violation of the Due Process Clause of the Fourteenth Amendment. Specifically, Petitioner claimed that the trial judge's previous involvement in investigating the "Afro-Set," a African-American nationalist organization of which Petitioner was a member, exposed the judge to information that could or did bias him against Petitioner. Additionally, Petitioner alleged that the prosecution's withholding of the newly discovered evidence amounted to a *Brady* violation. The trial court denied relief on the second petition, as did the Eighth District on appeal. *State v. Williams*, No. 72042, 1998 WL 6949 (Ohio Ct. App. Jan. 8, 1998).

On July 10, 1998, Petitioner filed the instant petition under 28 U.S.C. § 2254, seeking habeas relief from his conviction and sentence. The petition listed thirty-two grounds for relief. On March 31, 2004, the district court granted the petition in part and denied it in part, vacating Petitioner's sentence of death but affirming his conviction for aggravated murder. The district court granted relief from the sentence of death on the grounds that Petitioner's trial counsel was ineffective for failing to investigate and present mitigation evidence during the penalty phase of trial and that the trial court's admission of prosecution witness Kim Berry's testimony violated the Due Process Clause of the Fourteenth Amendment. Because these errors affected only the sentencing phase of the trial and because the district court found Petitioner's remaining claims meritless, the district court affirmed Petitioner's conviction for aggravated murder.

Respondent now appeals the district court's decision, arguing that the district court erred in holding that: (1) trial counsel rendered ineffective assistance during the mitigation phase of his trial; and (2) the admission of Kim Berry's testimony violated the Due Process Clause of the Fourteenth Amendment. Petitioner cross-appeals arguing that the district court erred in holding that: (1) the trial court's jury instructions did not violate the Eighth or Fourteenth Amendments; (2) Petitioner's

trial judge was not biased in violation of the Due Process Clause of the Fourteenth Amendment; (3) the prosecution did not withhold exculpatory evidence in violation of the Due Process Clause of the Fourteenth Amendment; and (4) combined evidentiary error is not a basis for habeas relief under AEDPA. We address each argument separately below.

## II.
## DISCUSSION

### A.    Standard of Review

The Anti-terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs our review of the instant case. Under AEDPA, we review the legal conclusions of the district court *de novo*, but apply a more deferential standard of review to the underlying state court decision. We may only reverse the state court holding if the holding resulted in a decision that is: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(d)(1) a state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 360, 413 (2000). A state court decision unreasonably applies clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Furthermore, the state court's failure to articulate reasons to support its decision is not grounds for reversal under AEDPA. *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir. 2000). In such cases, we conduct an independent review of a petitioner's claims. *Id.* "That independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Id.* In other words, this Court "'must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Id.* (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1177-78 (10th Cir. 1999)).

Where the state court fails to adjudicate a claim on the merits, however, AEDPA's deferential standard of review does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). "[AEDPA] by its own term is applicable only to habeas claims that were 'adjudicated on the merits in State court.'" *Id.* (quoting 28 U.S.C. § 2254(d)). This rule extends to portions of a claim not addressed by the state courts. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

### B.    Ineffective Assistance of Counsel

Respondent argues that the district court erred in granting Petitioner habeas relief based on defense counsel's ineffective assistance during the mitigation phase of trial. In particular, Respondent challenges the district court's factual finding that defense counsel failed to investigate potential mitigating evidence. To challenge the district court's factual finding, Respondent relies on a brief exchange between the Court, defense counsel, and Petitioner at the beginning of the mitigation phase of trial and negative inferences Respondent draws from the affidavits of Petitioner's trial counsel and wife. According to Respondent, because defense counsel did conduct an investigation, his "strategic choice" to argue residual doubt at the mitigation phase is protected under *Strickland v. Washington*, 466 U.S. 668 (1984). Inasmuch as we find that the district court

correctly determined that defense counsel failed to investigate mitigating evidence and that the failure constituted prejudicial and deficient performance under *Strickland*, 466 U.S. at 668, we affirm the district court on this ground.

### 1.          Defense Counsel's Conduct

The penalty phase of Petitioner's trial began on July 23, 1984, only two days after the jury returned a verdict convicting Defendant of aggravated murder.  At the hearing, defense counsel waived his opening statement and offered only one piece of mitigating evidence: Petitioner's testimony. Petitioner made the following brief statement.

> Well, first of all, what I have to say is going to be very brief, ladies and gentlemen. This crime happened and you reached a decision.  I am not going to argue with that decision.  First of all, I can say that I never intended for Archie to be killed.  I didn't want Archie killed.  I was angry, true enough; and if Darby took it on his own to do that, then I'm sorry for that, but it happened.  All I can say is to the attorneys and every one of you to look inside yourselves and see if I deserve to die.  That's all I have to say.

(J.A. at 4327-28.)

After Petitioner testified, defense counsel gave an incomprehensible closing argument, in which, upon very close reading, he seemed to argue residual doubt.  First, defense counsel informed the jury that Petitioner was in a "Catch 22" because Petitioner maintained his innocence at trial and offering mitigation evidence would be inconsistent with innocence.   Thereafter, defense counsel informed the jury that they could consider evidence presented at trial, pointed to witness testimony that was favorable to Petitioner, reminded the jury of the fact that a government witness admittedly had lied on the stand, and implied that Petitioner's co-defendants lied to escape the death penalty. Defense counsel further informed the jury that he should have done a better fact investigation and that nobody would ever really know what happened to Archie Moore.

In addition to making a weak and arguably incomprehensible case for residual doubt, defense counsel made the following prejudicial statements.  First, he stated that he was not going to "quarrel with the verdict or quibble with might have happened," undermining any residual doubt argument. (J.A. at 4333.)  Second, defense counsel indicated on at least two occasions that he believed our justice system "works,"  validating the jury's confidence in the verdict in this case.  Third, he described bloody photos of Moore, emphasizing the horrific nature of the crime.  Fourth, he seemingly stated that no mitigating circumstances existed. (*Id*. ("There are pictures before the blood is removed.  There are pictures after, well, I suppose that you can [sic] what mitigating facts could there ever be?  Well there is another side to the story and we hope that you will remember everything you heard."))  Fifth, defense counsel indicated that the death penalty was an appropriate punishment, stating:

> I am certainly not going to try and scare you into not recommending the death penalty by electrocution, it's no more horrible than death on a Christmas Eve, on that cold, cold night behind the Post Office.  An eye for an eye is no lesser, no lesser or more humane, there's no question about that, but the thing that makes the difference is that we are compassionate people.

Finally, defense counsel listed off potential mitigating factors and then stated that the factors may or may not exist in this case.

After defense counsel's closing statement, the prosecutor gave a closing statement.  The prosecutor essentially argued that defense counsel had not presented any mitigating evidence at the

hearing, and thus that the jury was obligated to find that the aggravating factors outweighed the mitigating factors. At 3:30 p.m. that same day, the jury returned a verdict recommending the death sentence. The trial court accepted the jury's recommendation and sentenced Defendant to death.

### 2.          Threshold Legal Issues

Before addressing the merits of Petitioner's claim, we must first determine which state court decision AEDPA requires this Court to review, and what evidence we may consider in reviewing that decision. Two Ohio courts issued opinions addressing the merits of Petitioner's claim that trial counsel rendered ineffective assistance by failing to investigate or present mitigation evidence: the Supreme Court of Ohio and the Ohio post-conviction trial court. *Williams*, 528 N.E.2d at 921; *State v. Williams*, No. CR 190615, slip. op. at 2 (Ct. Com. Pl. July 1, 1992). The Supreme Court of Ohio addressed Petitioner's claim on direct appeal. *Williams*, 528 N.E.2d at 921. Because the claim was raised on direct review, the Supreme Court of Ohio could not consider any evidence outside the trial court record. *State v. Ishmail*, 377 N.E.2d, 500, 501 (1978). Based on the trial court record, the Supreme Court of Ohio concluded that trial counsel had not rendered ineffective assistance. *Williams*, 528 N.E.2d at 921.

After the conclusion of direct review, Petitioner raised the same claim in post-conviction proceedings. This time, however, Petitioner supported his claim with evidence outside the trial court record. This evidence included 1) an affidavit from Petitioner stating that trial counsel never discussed the mitigation phase of trial with him, 2) several affidavits from friends and family members stating that trial counsel never contacted them, and 3) the affidavit of Dr. Nancy Schmitgoessling, which recounted Petitioner's troubled childhood and psychological problems. The Ohio post-conviction trial court denied Petitioner's claim on the merits, finding that trial counsel committed no error in failing to investigate or present mitigation evidence, and that such conduct did not prejudice Petitioner. *Williams*, No. CR 190615, slip. op. at 2 (Ct. Com. Pl. July 1, 1992). On appeal, Ohio's Eighth District Court of Appeals affirmed the post-conviction trial court's denial of relief. *State v. Williams*, No. CR-190615, slip. op. at 2 (Ohio Ct. App. November 24, 1993). The Eighth District Court, however, held that because Petitioner raised the claim on direct review, Ohio's doctrine of res judicata precluded post-conviction courts from considering its merits. *Id.*

Because, under Ohio law, the post-conviction trial court did not have the authority to consider the merits of Petitioner's claim, the parties conclude, and we agree, that this Court must review the decision of the Ohio Supreme Court. Nonetheless, we believe it is proper to consider the evidence Petitioner submitted to the post-conviction trial court when reviewing the Supreme Court of Ohio's decision. Although normally this Court would not consider evidence not before the court whose decision it is reviewing, here we find cause to do so. Petitioner's failure to properly support his claim with evidence before the Ohio courts was a direct result of his appellate counsel's ineffective assistance. Inasmuch as appellate counsel's ineffective assistance prejudiced Petitioner by rendering him unable to support his meritorious claim with the evidence presented in the post-conviction proceedings, Petitioner's error should be excused.

Ohio law requires criminal defendants to bring ineffective assistance of counsel claims on direct review if the defendant has new counsel on appeal, and the trial court record contains sufficient evidence to support the claim. *State v. Cole*, 443 N.E.2d 169, 171 (1982). Where the trial court record does not contain sufficient evidence to support the claim, however, the defendant must instead bring the claim in post-conviction proceedings. *See State v. Cooperider*, 448 N.E.2d 452, 454 (Ohio 1983). Unlike on direct review, in post-conviction proceedings a petitioner may introduce evidence outside the trial court record to support the claim. *See id.* If a defendant chooses to bring an ineffective assistance of counsel claim on direct review, however, Ohio's "res judicata" rule precludes the defendant from re-raising the claim in post-conviction proceedings. *Id.*

In the instant case, Petitioner chose to bring his ineffective assistance of counsel claim on direct review, thereby foregoing the opportunity to present evidence outside the trial court record to support his claim. Ohio has finality and judicial economy interests in enforcing its prohibition on re-litigation of ineffective assistance of counsel claims in post-conviction proceedings. *State v. Saxon*, — N.E.2d — , 2006 WL 759668, at *5 (Ohio March 20, 2006). Thus, normally, we would respect the Ohio court's decision to enforce "res judicata" and decline to consider a petitioner's evidence where the petitioner chose to raise his or her ineffective assistance of counsel claim on direct review. *Cf. Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991) (stating that procedurally defaulted claims are not reviewed for comity and federalism reasons).

Here, however, we find that comity is an insufficient reason to decline to consider Petitioner's evidence because there is cause for Petitioner's mistake and prejudice resulting therefrom. The Supreme Court has given us some guidance on when comity should give way to justice in the form of the doctrine of procedural default. *See id.* Federal courts normally decline to consider procedurally defaulted claims for comity reasons. *Id.* at 730 ("In the habeas context, the application of [procedural default doctrine] is grounded in concerns of comity and federalism.") Nonetheless, where a petitioner demonstrates cause and prejudice for the default a federal court will excuse it. *Id.* at 750. We believe that the same principles should apply to a Petitioner's error in the instant case. Because, as in the procedural default context, we would normally decline to consider Petitioner's evidence for comity reasons, here too cause and prejudice should excuse Petitioner's error.

Petitioner has cause for his error because it was a direct result of ineffective assistance of appellate counsel.[1] As this court has held in the procedural default context, ineffective assistance of appellate counsel constitutes cause for failing to properly present a claim before a state court. *See Lundgren v. Mitchell*, 440 F.3d 754, 766 (6th Cir. 2006) (citing *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003)). Counsel is ineffective if his or her conduct falls below an objective standard of reasonableness and causes the petitioner prejudice. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Counsel's unreasonable conduct prejudices a petitioner if a reasonable probability exists that but for such conduct the outcome of the proceedings would have been different. *Id.* at 694.

Here, Petitioner's appellate counsel performed below an objective standard of reasonableness by raising Petitioner's ineffective assistance of trial counsel claim on direct appeal despite the absence of evidence in support of the claim in the record. It is well-established in Ohio law that where an ineffective assistance of counsel claim cannot be supported solely on the trial court record, it should not be brought on direct appeal. *See Cooperrider*, 448 N.E.2d at 454; *State v. Leeper*, No. 2004CAA07054, 2005 WL 977063, at * 4-5 (Ohio Ct. App. April 26, 2005) (quoting *Cooperrider*); *State v. Fryer*, 627 N.E.2d 1065, 1072 (Ohio Ct. App. 1993) (quoting *Cooperrider*). Ineffective assistance of counsel claims based on trial counsel's failure to investigate and present mitigation evidence can never be proven based solely on evidence in the record because the record necessarily does not contain evidence of prejudice. *See State v. Scott*, 578 N.E.2d 841, 844 (Ohio Ct. App. 1989) ("[T]he failure to present mitigation evidence could not have been determined on direct appeal

---

[1]While Petitioner fails to make this argument on appeal, we are nonetheless free to base our holding on this ground because this Court may affirm the district court on any ground supported by the record. *City Management Corp. v. U.S. Chem. Corp.*, 43 F.3d 244, 251 (6th Cir. 1994). Additionally, we recognize that ineffective assistance of counsel may only be cause for procedural default if the ineffective assistance of counsel claim itself was not procedurally defaulted, or unless cause and prejudice for such default exists. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Here, Petitioner procedurally defaulted this claim by failing to raise it in state court. *Engles v. Issac*, 456 U.S. 107, 125 n. 28 (1982). However, Petitioner has cause and prejudice for this default. Petitioner did not learn his claim was barred by res judicata until the Eighth District Court of Appeals issued the final opinion in Petitioner's post-conviction proceedings. The Ohio Supreme Court then denied leave to appeal. Thus, Petitioner had no reason to raise this ineffective assistance of appellate counsel in state court until after the Eighth District Court issued its opinion, and no opportunity to raise it after the Eighth District Court issued its opinion.

because the evidence of the lack of an effort to contact witnesses and the availability of mitigation evidence was not present until the affidavits were made a part of the petition.")  Appellate counsel's decision to ignore this substantial body of case law was objectively unreasonable and falls below prevailing professional norms.   *See* Ohio Rules of Court, Code of Professional Responsibility, Canon 6, available at http://www.sconet.state.ohio.us/Rules/professional/default.asp#c6 (last visited April 19, 2006) (requiring Ohio attorneys to be familiar with relevant area of practice).

Additionally, counsel's unreasonable decision to raise this claim on direct appeal prejudiced Petitioner.  By raising the claim on direct appeal, counsel rendered Petitioner unable to raise this claim in post-conviction proceedings supported by the necessary evidence. *Williams*, No. CR-190615, slip. op. at 2 (Ohio Ct. App. November 24, 1993); *see also Cooperrider*, 44 8 N.E.2d at 454. As will be discussed below, Petitioner's claim was meritorious when supported with evidence. Thus, but for counsel's unreasonable decision, Petitioner would have been able to support his meritorious claim with the necessary evidence in post-conviction proceedings.  Accordingly, counsel's conduct prejudiced Petitioner.

Because appellate counsel's decision to raise Petitioner's claim on direct review was unreasonable and prejudicial, Petitioner has established that appellate counsel was ineffective and thus that he has cause for raising this claim on direct review in state court.  Normally, after determining a petitioner has cause for failing to raise a claim in accordance with state law, the court must make a separate inquiry into prejudice.  Where the cause is ineffective assistance of counsel, however, an additional showing of prejudice is unnecessary.  This is because a showing of prejudice is necessary to establish ineffective assistance of counsel.   If petitioner's counsel was constitutionally ineffective, the petitioner was necessarily prejudiced.  Thus, we now address the merits of Petitioner's claim.

### 3.      The Ohio Supreme Court Decision

On direct review, the Ohio Supreme Court held that Petitioner did not receive ineffective assistance of counsel in violation of the Sixth Amendment.[2] *Williams*, 528 N.E.2d at 921.  Applying *Strickland*, the court determined, without analysis, that defense counsel's failure to investigate and present mitigating evidence was reasonable under prevailing professional norms. *See id.*  In light of its finding that defense counsel did not err, it declined to address whether defense counsel's performance was prejudicial. *Id.*

---

[2]The entirety of the Ohio Supreme Court's decision addressing this issue is reproduced below.

Petitioner's eleventh, seventeenth and twentieth propositions of law concern his contentions that he was denied effective assistance of counsel at the guilt and mitigation phases of his trial and also at the appellate level. *Strickland v. Washington . . .* sets forth the test to be applied in determining whether a Petitioner has been denied effective assistance of counsel.  Applying this test, we find that [Petitioner] received the assistance of counsel to which he was entitled.  The first prong of the *Strickland* test requires [Petitioner] to show that his counsel's performance was deficient.  Here, defense counsel made no errors serious enough to deprive [Petitioner] of the 'counsel' guaranteed by the Sixth Amendment.   While defense counsel's trial and appellate strategy might have been debatable, they fell within the wide range of reasonable professional assistance.  Therefore, we need not proceed to the second prong of the *Strickland* test, which requires that [Petitioner] show that counsel's deficient performance prejudiced his defense.  These propositions of law are not well-taken.

*Williams*, 528 N.E.2d at 921.

**4.　　Clearly Established Federal Law**

The Supreme Court first articulated the now familiar two part test for determining whether counsel is ineffective in *Strickland v. Washington*, 466 U.S. 668 (1984), and "[i]t is past question that the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 390. Under *Strickland*, a Petitioner seeking to establish that his counsel's assistance was ineffective must show 1) that his counsel's performance was deficient because it fell below an objective standard of reasonableness and 2) that counsel's deficient performance prejudiced Petitioner. *Strickland*, 466 U.S. at 687-88. In establishing prejudice, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case," but only, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In *Strickland*, the Court dealt specifically with the claim that counsel's failure to investigate and present mitigation evidence constituted deficient performance. *Strickland*, 466 U.S. at 699. The Court explained that while strategic choices made after a thorough investigation

> are virtually unchallengeable; . . . strategic choices made after a less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigation or to make a reasonable decision that a particular investigation is unnecessary.

*Id.* at 690-91. Thus, it follows that any decision to forgo mitigation evidence is unreasonable if not made after a reasonable decision not to investigate further. *See id.*

The Supreme Court has now applied *Strickland* in the AEDPA context at least three times to hold that a defense attorney's failure to adequately investigate and present mitigating evidence at the sentencing phase of a death penalty trial constitutes ineffective assistance of counsel. *See Rompilla v. Beard*, — U.S. — 125 S.Ct. 2546 (June 10, 2005); *Wiggins*, 539 U.S. at 510*; Williams*, 529 U.S. at 390. In those cases, the Court has reiterated that trial counsel has an "obligation to conduct a thorough investigation of the defendant's background" in death penalty cases. *Wiggins*, 539 U.S. at 522, 524 (citing ABA guidelines advising attorneys to conduct thorough investigations); *Williams*, 529 U.S. at 396. In this context, the Court has warned against a tendency to invoke "strategy" as a "*post-hoc* rationalization of counsel's conduct [rather] than an accurate description of [his or her] deliberations prior to sentencing" to explain counsel's decisions. *Id.* at 527.

**5.　　The Ohio Supreme Court's Decision Was Contrary to *Strickland***

Defense counsel's complete failure to investigate before deciding not to present mitigating evidence is deficient performance as a matter of law under *Strickland*, and thus, the Ohio Supreme Court's determination that counsel did not err is contrary to federal law as articulated in *Strickland*.

**a.　　Defense Counsel Conducted No Investigation**

The district court correctly found that defense counsel failed to conduct any investigation into mitigating evidence. Petitioner submitted five affidavits from friends and family members all stating that defense counsel failed to contact them. Additionally, the following exchange after the jury rendered its guilty verdict supports the conclusion that defense counsel failed to discuss the mitigation phase with Petitioner prior to trial.

Mr. Nugent:　　　　And it is also my understanding, number two, at this time, the defense has chosen not to have the defendant referred either for a psychiatric report pending the sentencing phase or a

|  | probation presentence report, they have opted not to consider either or both of those reports. |
|---|---|
| Mr. Shaughnessy: | Your Honor, this isn't precisely what I said. I said it might be possible, assuming that was what we were going to do, but I should sit down here with him [Petitioner] and talk with him, and I will have that answer very quickly – – |
| Mr. Nugent: | You indicated – – |
| Mr. Shaughnessy: | Excuse me, sir. If I can just have ten seconds. |
| The Court: | Go right ahead, Mr. Shaughnessy. |
| Mr. Shaughnessy: | Well, your Honor, its seems we have disposed of that very quickly. The defendant is in agreement with my position and what Mr. Nugent said is entirely correct. We are not going to ask for a psychiatric report or psychological report or any other report. We are ready to proceed on Monday morning at the pleasure of the Court. |

(J.A. at 418-19.) This exchange took place only two days prior to the mitigation hearing. If defense counsel failed to discuss court ordered psychiatric and pre-sentence reports with Petitioner before that time, it is highly unlikely that defense counsel discussed mitigation with Petitioner. It is unlikely that defense counsel could have conducted a mitigation investigation without consulting Petitioner inasmuch as an obvious starting point for any investigation into Petitioner's life history would be Petitioner. In any case, this exchange most certainly does not, as Respondent contends, prove that defense counsel conducted a mitigation investigation.

Respondent's remaining arguments that defense counsel did conduct an investigation rest on faulty logic. First, Respondent argues that defense counsel's own affidavit demonstrates that defense counsel conducted a mitigation investigation. According to Respondent, because the affidavit does not expressly state that defense counsel did not conduct an investigation, defense counsel must have conducted an investigation. Respondent reaches this conclusion by assuming that defense counsel was on good terms with Petitioner and therefore would have helped him establish an ineffective assistance of counsel claim if at all possible. Defense counsel's affidavits, however, do not address the mitigation phase of trial but are narrowly focused on other issues. Thus, it is not at all clear that defense counsel would have stated that he had not conducted a mitigation investigation in his affidavits. Now that defense counsel has passed away, Petitioner cannot obtain a new affidavit from defense counsel expressly stating that he failed to conduct an investigation. Moreover, we find Respondent's proposed negative inference inappropriate and unpersuasive in light of the affirmative evidence that defense counsel failed to interview Petitioner's friends and family members.

Respondent next argues that the affidavit of Petitioner's wife, Michelle, evidences that defense counsel conducted an investigation. In contrast to five other affidavits from Petitioner's friends and family members, Michelle's affidavit does not state that defense counsel failed to contact her. Therefore, according to Respondent, defense counsel must have contacted her about mitigation evidence. Although defense counsel in all likelihood had some contact with Michelle, there is no indication of whether of this contact had anything to do with the mitigation phase of trial. Therefore, Michelle's affidavit does not support the proposition that defense counsel conducted a mitigation investigation.

### b.    Failure to Investigate And Present Mitigation Evidence Constituted Deficient Performance

Defense counsel's complete failure to investigate and present mitigation constituted deficient performance under *Strickland,* and the Ohio Supreme Court's decision finding that counsel did not render deficient performance was contrary to clearly established federal law. The Supreme Court has now stated on at least three occasions that *Strickland* requires defense counsel to make reasonable investigations into mitigation evidence.[3]  *Rompilla,* – U.S. – , 125 S. Ct. at 2462-63*; Wiggins,* 539 U.S. at 524-25*; Williams,* 529 U.S. at 395. It has further stated that no decision to forgo the presentation of mitigation evidence is reasonable trial strategy under *Strickland* unless the decision is made after a reasonable investigation into mitigation evidence. *Wiggins,* 539 U.S. at 533-34. Thus, it follows that defense counsel's decision to focus on residual doubt alone could not constitute a reasonable trial strategy because defense counsel never conducted an investigation into mitigation before deciding to pursue residual doubt.[4]  Therefore, the Ohio Supreme Court's determination that defense counsel's failure to investigate and present mitigation evidence was not deficient performance was contary to *Strickland.*

### 6.    Defense Counsel's Error was Prejudicial

Because the Ohio Supreme Court held that defense counsel's performance was not deficient, it failed to reach the issue of prejudice. Thus, pursuant to the Supreme Court's instructions in *Wiggins*, we address *de novo* whether defense counsel's error prejudiced Petitioner. *Wiggins*, 539 U.S. at 534. In making this assessment, we must reweigh the mitigation evidence against the evidence of aggravation. *Id.* Additionally, we must consider all the mitigation evidence, including evidence presented in habeas proceedings.

We find that defense counsel's complete failure to investigate and present mitigation evidence prejudiced Defendant because a reasonable probability exists that, but for counsel's error, one juror would have voted against death. As discussed above, prejudice exists where there is a reasonable probability that but for counsel's error a petitioner would not have been sentenced to death. In Ohio, a sentence of death may only be imposed by the unanimous vote of a jury. *State v. Robb*, 723 N.E.2d 1019, 1044 (Ohio 2000). Thus, to establish prejudice, Petitioner need only show that there is a reasonable probability that one juror would have voted against death had defense counsel presented mitigation evidence. *See Wiggins*, 539 U.S. at 537 (applying Maryland law).

In this case, Petitioner has established prejudice. Petitioner submitted affidavits from six friends and family members stating that they would have testified at a mitigation hearing, as well as the affidavit of Dr. Nancy Schmitgoessling, a psychologist licensed in the State of Ohio. (J.A. at 5219-37.) The affidavits contain the following mitigating evidence:

- Petitioner's mother was an alcoholic, who neglected him and "hit [him] upside the head with whatever she could get her hands on," (J.A. at 5220, 5226, 5228);

---

[3]This Court has noted that this standard of conduct applied in the 1980s as well as today. *See Hamblin v. Mitchell*, 354 F.3d 482, 487 (6th Cir. 2003) ("The 1989 Guidelines adopted as 'prevailing norms' in *Wiggins* reinforce and support our court's previous rulings in *Glenn, Austin* and *Coleman* applying similar norms to cases tried in the 1980s. Although the instant case was tried before the 1989 ABA edition of the standards was published, the standards merely represent a codification of longstanding, common-sense principles of representation understood by diligent, competent counsel in death penalty cases.").

[4]In 1997 the Ohio Supreme Court held that residual doubt was not a mitigating factor under Ohio law. *State v. McGuire*, 686 N.E.2d 112, 1123 (1997). Because the trial in this case took place in 1982, however, the pursuit of residual doubt was not necessarily *per se* an unreasonable strategy.

- Petitioner's father left his mother when Petitioner was young, (J.A. at 5220);

- Petitioner's Uncle Lindy, who was his primary male role model, was a career criminal, (J.A. at 5230, 5232.)

- Petitioner grew up in an environment, in which "there was an expectation that violence can and sometimes needs to be used, that people are constantly attempting to exploit others, and that illegal activities are often to be admired," (J.A. at 5221);

- Petitioner was dependant on cocaine at the time he had Darby killed, and the cocaine induced paranoid fears that Petitioner could not distinguish from reality, (J.A. at 5221);

- Petitioner suffers from Dyssocial Reaction, Mixed Personality Disorder with Anti-social and Narcissistic Features, (J.A. at 5222);

- Petitioner was at one time committed to the Afro-Set, a black Nationalist organization, (J.A. at 5230);

- Petitioner treated his wife's autistic son like his own, (J.A. at 5236-37).

In addition to presenting the jury with mitigating evidence, the testimony of Petitioner's family and friends would have humanized Petitioner. Thus, the evidence listed above creates a reasonable probability that one juror would have voted against death, and we hold that Petitioner was prejudiced by counsel's ineffective assistance.

In summary, we find that Petitioner is entitled to relief under AEDPA based on defense counsel's ineffective assistance of counsel during the mitigation phase of trial. The Ohio Supreme Court's decision finding that defense counsel's conduct did not constitute deficient performance is contrary to clearly established federal law as set forth by the Supreme Court in *Strickland*. Moreover, defense counsel's conduct prejudiced Petitioner, rendering the sentence of death unreliable and thus in violation of the Sixth Amendment. Accordingly, we affirm the district court's grant of a conditional writ of habeas relief as to Petitioner's sentence on this ground.

## C.      Kim Berry's Testimony

Respondent next argues that the district court erred in holding that the admission of Kim Berry's testimony prejudiced Defendant's due process rights. During the guilt phase of trial, the prosecution presented the testimony of Kim Berry in order to rebut Petitioner's statement that he did not use children in his drug trade. Kim Berry, the thirteen year old daughter of Merle Berry, testified that she had sold drugs for Petitioner on at least one occasion and that Petitioner had used her to hide drugs from the police. The Ohio Supreme Court held that the admission of Kim Berry's testimony violated Ohio Rule of Evidence 608(B), which prohibits the admission of extrinsic evidence of specific acts to impeach a witness. *Williams*, 528 N.E.2d at 919. Nonetheless, the Ohio Supreme Court concluded that the admission of Kim Berry's testimony was not reversible error because the error was harmless. *Id.* The district court agreed with Petitioner and granted the writ of habeas corpus on Petitioner's sentence. In reaching its decision, the district court relied on the affidavits of two jurors, Edith Bolden and Issac Diggs, stating that they considered Kim Berry's testimony in recommending Petitioner's death sentence. Because we find that Petitioner procedurally defaulted this claim, we hold that the district court erred in granting relief on this ground.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-2. This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle,* 456 U.S. at 125 n.28. Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the *legal* and factual basis for his or her claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

In this case, Petitioner procedurally defaulted his claim that the admission of Kim Berry's testimony violated his federal due process rights. Although Petitioner raised the issue in his appeal to the Eighth District Court of Appeals, he failed to raise the issue to the Ohio Supreme Court in pursuing direct review. *O'Sullivan*, 526 U.S. at 847-48 (holding a claim procedurally defaulted where the petitioner did not appeal the claim to the state supreme court). In his brief to the Ohio Supreme Court, Petitioner argued that the introduction of Kim Berry's testimony violated the Ohio Rules of Evidence, but not that the introduction violated the federal Constitution. Petitioner's claim was entitled "The Prosecution May Not Prove Specific Incidents of the Defendant-Appellant's Bad Character through a Rebuttal Witness." (J.A. at 4670.) Petitioner's brief did not once mention the Due Process Clause, the Constitution, or the Fourteenth Amendment, nor did it cite to a single Supreme Court case. Additionally, the Ohio cases Petitioner did cite in his brief do not address relevant federal constitutional law. Therefore, it would seem that Petitioner failed to properly raise this issue before the Supreme Court of Ohio.

Petitioner nonetheless argues that this claim is not procedurally defaulted. He relies on the Ohio Supreme Court's citation to *Delaware v. VanArsdall*, 475 U.S. 673 (1986), in its decision

rejecting his claim, which he claims indicates that the Ohio Supreme Court understood Petitioner to be articulating a constitutional claim. In *VanArsdall*, the United States Supreme Court applied harmless error analysis to a Confrontation Clause claim. *Id.* Thus, Petitioner reasons, the Ohio Supreme Court understood Petitioner's claim as one of constitutional error.

We disagree. Ohio, like most states, applies harmless error analysis to state evidentiary errors. The citation to *VanArsdall*, which contains an extensive analysis of what constitutes harmless error, read in the context of the Ohio Supreme Court's entire opinion, simply supports the proposition that evidentiary errors are not reversible if harmless. It does not indicate that the Ohio Supreme Court applied a due process analysis. Our conclusion is further supported by the fact that *VanArsdall* is not a due process case, the Ohio Supreme Court never once refers to due process, and Petitioner's brief did not raise due process. Because Petitioner failed to fairly present this issue to the Ohio Supreme Court, the claim is procedurally defaulted. As Petitioner failed to argue cause and prejudice to excuse the default, we hold that the default is not excused and decline to reach the merits of Petitioner's due process claim. Accordingly, we reverse the order of the district court granting relief on this ground.

## D.      Jury Instructions

As his first argument on cross-appeal, Petitioner raises two distinct objections to the jury instructions given during the sentencing phase of his trial. First, Petitioner objects to the trial court's instruction that a sentence of life must be unanimous ("unanimous-life instruction"). According to the Petitioner, the unanimous-life instruction is contrary to Ohio law, codified at Ohio Revised Code § 2929.03(D)(2), and thus is unconstitutional under the Supreme Court's decision in *Caldwell v. Mississippi*, 472 U.S. 320 (1985). Second, Petitioner objects to the trial court's instruction prohibiting the jury from considering a life sentence until after the jury unanimously agreed that death would be inappropriate ("acquittal first instruction"). According to Petitioner, acquittal first instructions violate the Eighth Amendment as interpreted in *Mills v. Maryland*, 486 U.S. 367 (1988).

We reject both of Petitioner's arguments and affirm the district court's denial of relief on this ground. As will be further explained below, the unanimous-life instruction is not contrary to Ohio law and thus cannot violate the principles set forth in *Caldwell*. Additionally, Petitioner procedurally defaulted his acquittal first claim by failing to argue that the acquittal first instruction was unconstitutional in state court. Therefore, although acquittal first instructions are unconstitutional, as will be explained below, we do not grant relief on this ground.

### 1.      Procedural Default

Although Petitioner's challenge to the unanimous-life instruction is preserved for this Court's review, Petitioner's challenge to the acquittal first instruction is not preserved for this Court's review. Petitioner's challenge to the acquittal first instruction is not preserved for this Court's review because Petitioner to failed fairly present this issue to the Supreme Court of Ohio on direct review. As discussed with regard to Kim Berry's testimony, a petitioner must raise both the legal and factual basis for a claim in order to have fairly presented the claim to the state court. *McMeans*, 228 F.3d at 681. Petitioner argues that his acquittal first claim was adequately raised by relying on general allegations in his brief to the Ohio Supreme Court arguing that the unanimous-life instruction was unconstitutional. Raising the unanimous-life claim does not preserve the acquittal first claim for this Court's review. Petitioner's unanimous-life claim is premised on *how many* jurors are necessary to impose a life sentence under Ohio law whereas an acquittal first claim is premised on *when* the jurors may considering imposing a life-sentence. Because Petitioner did not raise his acquittal first claim in his brief to the Ohio Supreme Court, the Ohio Supreme Court did not have an opportunity to review it. As Petitioner fails to argue to cause and prejudice for the

procedural default, we decline to waive the default and affirm the order of the district court denying relief on this ground.

## 2. Unanimous-Life Instruction[5]

The trial court's instruction to the jury stating that any verdict recommending life would have to be unanimous did not violate the Eighth Amendment as set forth in *Caldwell* because it properly reflected Ohio law. In *Caldwell v. Mississippi*, the Supreme Court "held . . . that the jury must not be misled regarding the role it plays in the sentencing decision." *Romano v. Oklahoma*, 512 U.S. 1, 8 (1994) (citing *Caldwell*, 420 U.S. at 341-42). "[The Supreme Court has] since read *Caldwell* as relevant only to certain types of comments – those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision. To establish a *Caldwell* violation, a petitioner necessarily must show that the remarks to the jury improperly describe the role assigned the jury by local law." *Id.* at 9 (internal citations omitted).

The unanimous-life instruction did not violate Ohio law. Under Ohio law, a jury verdict recommending a sentence of life in a death penalty case must be unanimous. As this Court has recognized on numerous occasions, "[i]n *Brooks*, the Ohio Supreme Court reaffirmed that the jury's determination that a life sentence is appropriate must be unanimous and that a jury should be instructed of that fact." *Buell v. Mitchell*, 274 F.3d 337, 356 (6th Cir. 2001). The mere fact that a defendant, practically speaking, may receive a life sentence despite a jury's inability to agree does not mean that a jury verdict imposing life need not be unanimous. As explained by the Ohio Supreme Court in *Brooks*,

> R.C. 2929.03(D)(2) facially seems to require the jury to recommend a life sentence even if only one juror finds the death penalty inappropriate. There is some dispute in the case law, however, as to how much power a solitary juror has to nullify a death sentence. In *State v. Jenkins* . . . this court held that in returning a sentence of life imprisonment under JR.C. 2929.03(D), the jury's verdict must be unanimous. In *State v. Springer*, . . . this court held that "when a jury becomes irreconcilably deadlocked during its sentencing deliberations in the penalty phase of a capital murder trial and is unable to reach a unanimous verdict to recommend any sentence authorized by R.C. 2929.03(C)(2), the trial court is required to sentence the offender to life imprisonment. Thus, practically speaking a lone juror could prevent the imposition of the death penalty.
>
> Jenkins defines what the jury's job is – to render a unanimous verdict. *Springer* simply explains what a trial court must do if a jury is deadlocked, that is when the jury does not properly do its job. We believe that *Jenkins* and *Springer* may be harmonized, and made consistent with the policy behind R.C. 2929.03(D), through a jury instruction which requires the jury, when it cannot unanimously agree on the

---

[5]Unanimous-life claims must also be distinguished from unanimous -mitigating factor claims. A unanimous life claim is based on a jury instruction stating that a *verdict imposing life* must be unanimous. A unanimous-mitigating factor claim is based on a jury instruction stating that *mitigating factors* must be unanimously found in order to be considered. In case law, both are sometimes referred to as unanimity claims. Petitioner is not arguing that the trial court erroneously instructed the jury that mitigating factors had to be unanimously found in order to be considered. Moreover, even if Petitioner made this argument, there would be no support in the record for sustaining it. The instructions did not state that mitigating factors had to be unanimously found. In this Circuit, failing to expressly state that mitigating factors need not be unanimously found does not improperly imply that mitigating factors must be unanimously found. *Coe v. Bell,* 161 F.3d 320, 337-38 (6th Cir. 1998)*; Kordenbrock v. Scroggy,* 919 F.2d 1091, 1121 (6th Cir. 1990). This will be discussed more, *infra*, IV.B.

> death sentence, to move on in their deliberations to a consideration of which life
> sentence is appropriate, with that determination to be unanimous.

*Brooks*, 661 N.E.2d at 1042. In other words, where the jury cannot unanimously recommend life or death, the trial court must sentence the petitioner to life *without the benefit of any jury verdict. See Brooks*, 661 N.E.2d at 1042; *see also Buell,* 274 F.3d at 356.

Moreover, to the extent Petitioner is arguing that the jury instruction on unanimity was misleading because it failed to inform the jury of the consequences of deadlock – that practically speaking a lone juror can impose a sentence of life – this Court must reject Petitioner's claim. The Supreme Court rejected just such a challenge to instructions under the Federal Death Penalty Act in *Jones v. United States*, 527 U.S. 373 (1999). In *Jones*, the petitioner argued that the Eighth Amendment required the trial court to instruct the jury on the consequences of deadlock. *Id.* at 382. In other words, the petitioner argued that the Eighth Amendment compelled the trial court to inform the jury that the petitioner would receive a life sentence if the jury could not agree. *Id.* The Supreme Court explained:

> The truth of the matter is that the proposed instruction has no bearing on the jury's
> role in the sentencing process. Rather, it speaks to what happens in the event that the
> jury is unable to fulfill its role – when deliberations break down and the jury is
> unable to produce a unanimous sentence recommendation. Petitioner's argument . . .
> appears to be that a death sentence is arbitrary within the meaning of the Eighth
> Amendment if the jury is not given any bit of information that might possibly
> influence an individual juror's voting behavior. That contention has no merit. We
> have never suggested, for example, that the Eighth Amendment requires a jury to be
> instructed on the consequences of a breakdown in the deliberative process. On the
> contrary, we have long been of the view that the very object of a jury system is to
> secure unanimity by comparison of views, and by arguments among the jurors
> themselves.

*Id.* (internal citation omitted); *see also Buell*, 274 F.3d at 357. Therefore, the instructions on unanimity in this case did not violate the Eighth Amendment.

###         3.         **Acquittal First Instruction**

Although we hold that Petitioner's acquittal first claim is procedurally defaulted, we nonetheless address acquittal first jury instructions. We do this because the state of this Circuit's law on acquittal first instructions is less than clear, as evidenced by certain district courts' improper refusal to follow *Mapes v. Coyle,* 171 F.3d 408 (6th Cir. 1999) and *Davis v. Mitchell*, 318 F.3d 682 (6th Cir. 2003). *Hartman v. Bagley*, 318 F. Supp. 2d 682, 671 n.16 (N.D. Ohio 2003); *Taylor v. Mitchell*, 296 F. Supp. 2d 784, 813-14 (N.D. Ohio 2003). Should Ohio again choose to seek the death penalty against Petitioner, they should be equipped to impose it in a manner that does not violate the Constitution.

Under the doctrine established in *Mapes,* 171 F.3d at 415*,* and expanded in *Davis*, 318 F.3d at 689, acquittal first jury instructions are unconstitutional in this Circuit. An acquittal first jury instruction is "any instruction requiring that a jury unanimously reject the death penalty before it can *consider* a life sentence . . . ." *Davis*, 318 F.3d at 689 (emphasis added); *see also Henderson v. Collins*, 262 F.3d 615, 622 (6th Cir. 2001). Acquittal first jury instructions are unconstitutional because they violate the Eighth and Fourteenth Amendments. *Davis*, 318 F.3d at 689; *see also Mapes*, 171 F.3d at 416 (noting that the Ohio Supreme Court found that acquittal first instructions violate the Eighth and Fourteenth Amendments)*.* As the Supreme Court explained in *Mills v. Maryland*, 486 U.S. at 374-75, the Eighth Amendment, which applies to the states through the

Fourteenth Amendment, requires jurors to consider all mitigating evidence. Any instruction which precludes jurors from considering mitigating evidence violates the Eighth Amendment. *Id.* According to *Davis,* acquittal first jury instructions violate the Eighth Amendment because they "preclude[] the individual juror from giving effect to mitigating evidence and [thus] run afoul of *Mills*." *Davis,* 318 F.3d at 689 (citing *Mills*, 486 U.S. at 367).

Acquittal first jury instructions may also violate the Fourteenth Amendment's Due Process Clause by denying petitioners the right to a fair trial. *See, e.g.*, *Mapes*, 171 F.3d at 416 (citing *State v. Brooks*, 661 N.E.2d 1030, 1041 (Ohio 1996)); *Henderson*, 262 F.3d at 624-25 (Clay J., dissenting). In general, jury instructions violate a petitioner's right to a fair trial when they are contrary to state law and undermine the reliability of a verdict. *See Kordenbrock v. Scroggy*, 919 F.2d 1091, 1120-21 (en banc) (Kennedy, J., dissenting, but writing for eight out of thirteen judges on this issue). In *Brooks*, 661 N.E.2d at 1041, the Ohio Supreme Court held that acquittal first jury instructions are contrary to Ohio law. It further held that acquittal first jury instructions constitute reversible error because the instructions undermine the reliability of the verdict. *Id.* Acquittal first jury instructions undermine the reliability of a verdict by creating the risk that a lone juror will improperly impose a sentence of death on a defendant because the juror mistakenly believes that he or she is prohibited from considering life, unless all of the jurors unanimously reject death. *See Mapes,* 171 F.3d at 416 (quoting *Brooks*, 661 N.E.2d at 1041). It is important to note that acquittal first jury instructions only violate due process where state law prohibits acquittal first instructions. *See id.* In contrast, acquittal first jury instructions always violate the Eighth Amendment. *Davis*, 318 F.3d at 689.

Despite the clear unconstitutionality of acquittal first jury instructions, there is some case law in this Circuit questioning the validity of *Mapes* and *Davis*. In *Scott v. Mitchell*, 209 F.3d 854, 876 (6th Cir. 2000), this Court held that *Mapes'* holding on acquittal first instructions was dicta because the *Mapes* court held that the acquittal first claim was procedurally defaulted and thus did not need to reach the legality of the instructions. Additionally, several cases have stated that *Mapes and Davis* conflict with prior panel precedent, in particular *Henderson v. Collins*, 262 F.3d at 693-94, and *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). *See Davis*, 318 F.3d at 692 (Boggs, J., dissenting); *Hartman*, 318 F. Supp. 2d at 671 n.16; *Taylor*, 296 F. Supp. 2d at 813-14. Because dicta does not bind this Court, and no panel may overrule a prior panel decision, these holdings imply that *Mapes* and *Davis* do not bind this Court.

A reading of *Mapes*, however, makes very clear that its holding on acquittal first instructions was not dicta. In Section 1.e. of the *Mapes* decision this Court concluded that the petitioner's claim that the trial court improperly gave acquittal first instructions was procedurally defaulted. *Mapes*, 171 F.3d at 419. Nonetheless, the Court proceeded to consider the legality of acquittal first instructions because the legality of such instructions was dispositive of one of petitioner's ineffective assistance of appellate counsel claims, which was not procedurally defaulted. *Id.* at 416-17, 427-28. Accordingly, the Court's language on acquittal first instructions is not dicta. Ironically, the language addressing *Mapes* in *Scott* is dicta because the claim in *Scott* was procedurally defaulted. *See Roe v. Baker,* 316 F.3d 557, 564 (6th Cir. 2003).

Similarly, this Court's decision in *Henderson*, 262 F.3d at 621, does not irreconcilably conflict with *Davis*. As the dissent in *Davis* correctly notes, the instructions at issue in *Davis* were implicitly approved in this Court's decision in *Henderson*. 318 F.3d at 693-94 (Boggs, J., dissenting). This conflict is of no real consequence, however, because the part of *Henderson* approving of the instructions is dicta. In *Henderson*, this Court addressed the constitutionality of an *Allen* charge and not the constitutionality of preliminary instructions that included an acquittal first instruction. In fact, the *Henderson* court expressly held that the legality of preliminary instructions is not dispositive of the constitutionality of an *Allen* charge. *Id.* ("We read *Jenkins* as authorizing a review of the 'facts and circumstances' surrounding the *Allen* charge itself and not a

*carte blanche* invitation to bootstrap every preliminary instruction into the inquiry.") Moreover, the discussion of the merits of the *Allen* charge claim, in which the discussion of the acquittal first instruction arose, was dicta. This Court noted that the petitioner had failed to exhaust his state court remedies regarding the legality of the preliminary instructions. *Id.* ("[T]he record reveals that counsel for Petitioner did not advance that argument to the Ohio Courts.") Therefore, any language in *Henderson* addressing acquittal first instructions was not necessary to the Court's holding. Accordingly, it does not bind this Court and render *Davis* in conflict with this Court's prior binding precedent.

Finally, *Mapes* and *Davis* do not conflict with *Coe*. *Coe* and its progeny do not even address acquittal first jury instructions. In *Coe*, this Court held that the following jury instruction did not violate the Eighth Amendment as interpreted in *Mills v. Maryland*.

> If you unanimously determine that at least one statutory aggravating circumstance or . . . circumstances have been proved by the State, beyond a reasonable doubt, and said circumstances or circumstances are not outweighed by any mitigating circumstances, the sentence shall be death.

*Coe*, 161 F.3d at 336. In so holding, this Court rejected the petitioner's argument that the instruction improperly implied that a jury must unanimously find the existence of a mitigating factor before any juror could consider that factor. *Id.* at 338. The petitioner had argued that the instruction did so by expressly stating that the jury must make an unanimous determination as to each aggravating factor while simultaneously remaining silent as to whether a mitigating factor need be unanimously found. *See id.* at 336-38; *see also Kordenbrock*, 919 F.2d at 1108-1109 (Merritt, dissenting), 1120-21 (Kennedy, writing for majority on this issue). Recognizing that *Mills v. Maryland* rendered reversible all jury instructions that improperly implied that mitigating factors must be unanimously found, this Court nonetheless upheld this instruction on the ground that it carried no such implication. *Coe*, 161 F.3d at 337-38.

In *Davis*, however, a somewhat different jury instruction, and very different legal claim, were at issue. In *Davis*, the petitioner challenged the following instruction on the ground that it improperly foreclosed individual jurors from considering a life sentence until the entire jury unanimously rejected the death sentence. *Davis*, 318 F.3d at 685, 687. The instructions read:

> [Y]ou must find that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances which the defendant was found guilty of committing outweigh the mitigating factors.
> In this event you will then proceed to determine which of the two possible life imprisonment sentences to recommend to the Court.

*Id.* at 685. The *Davis* panel accepted the petitioner's argument and found that this instruction violated the Eighth Amendment as interpreted in *Mills v. Maryland*. *Id.* at 687. The error was not that the instruction failed to expressly state all mitigating factors need not be unanimously found, but rather that the instruction improperly implied that the jury must unanimously acquit the petitioner of death before considering a life sentence. *See id.* By foreclosing jurors from considering a life sentence before a unanimous jury acquittal of death, the instruction improperly prevented individual jurors from independently considering a life sentence and thereby giving full consideration to each mitigating factor. *Id.*

The specific linguistic problem in *Davis* was that a jury was first instructed that an acquittal from death "must" be unanimous, and then instructed that only thereafter could it consider a life sentence. *See id.* at 698. The key language in the *Davis* instruction was the phrase "*In this event* you will then proceed to determine which of the two possible life imprisonment sentences to

recommend," which followed an instruction on acquittal. *Id.* at 685, 698. The fact that the phrase "In this event" followed an instruction on acquittal improperly implied that only in "in [the] event" of acquittal, which had to be unanimous, could the jurors consider life. *Id.* Accordingly, the jury instruction violated the Eighth Amendment as interpreted in *Mills v. Maryland*.

In contrast, the instruction in *Coe* stated only that the jury must impose death if it unanimously agrees that the aggravating factors outweigh the mitigating factors. *Coe*, 161 F.3d at 336. It did not expressly instruct the jury that, in the event there was a unanimous acquittal of death, it could proceed to consider life. *Id.* Therefore, the instruction in *Coe* was not an acquittal first instruction, and would have been upheld even if the petitioner had articulated an acquittal first claim.

Both the language of the jury instruction and the legal claim at issue in this case are more like *Davis* than like *Coe*. Just as in *Davis*, the trial court instructed the jury that an acquittal from death "must" be unanimous, and only "in [that] event" could the jury consider life. The trial court stated:

> That is, *you must unanimously* find that the State has failed to prove beyond a reasonable doubt that aggravating circumstances of which the defendant was found guilty of committing outweigh the mitigating factors. *In this event*, you will then proceed to determine which of the two possible life imprisonment sentences to recommend to the Court.

(J.A. at 4382 (emphasis added).) Furthermore, Petitioner contends that the problem with the instruction in the instant case is not that it implies that mitigating factors must be unanimously found before being considered, but rather that the instruction requires a unanimous acquittal from death before an individual juror may consider the imposition of life. By foreclosing an individual juror's consideration of a life sentence, the instruction prevents jurors from giving full effect to the mitigating factors. Accordingly, as in *Davis*, the jury instruction violates the Eighth Amendment.

**E.     Impartial Trial Judge**

Petitioner next claims that his due process rights were violated because his trial judge, Frederick Coleman, was biased and/or appeared biased against Petitioner. Petitioner argues that Coleman was biased because in the 1970s Coleman received investigative reports on the Afro-Set and Petitioner, a member of the Afro-Set, in Coleman's capacity as United States Attorney for the Northern District of Ohio. Because the Due Process Clause did not require Judge Coleman to recuse himself, we affirm the decision of the district court denying habeas relief on this claim.

**1.     Clearly Established Federal Law**

The Due Process Clause of the Fourteenth Amendment prohibits a defendant from being tried before a judge whose "substantial" and "direct" interests may be furthered by the outcome of the trial. *See Aetna Life Ins. Co v. Lavoie*, 475 U.S. 813, 824 (1986) (citations omitted) (disqualifying a judge who did not have a pecuniary interest in the outcome of the particular case but whose interests in another case were directly furthered by his holding); *In re Murchison*, 349 U.S. 133 (1931) (disqualifying a judge with non-pecuniary interest in the outcome of trial). An interest is sufficiently substantial and direct to implicate the Due Process Clause where "the 'situation would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear and true.'" *Aetna Life Ins. Co.*, 475 U.S. at 822 (quoting *Ward v. Village of Monroeville*, 409 U.S. 57, 60 (1972)); *In re Murchison*, 349 U.S. at 136 (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)).

"[N]ot 'all questions of judicial qualification [, however,] involve constitutional validity.'" *Aetna Life Ins. Co.*, 475 U.S. at 820 (quoting *Tumey*, 273 U.S. at 523). "[T]he traditional common-law rule was that disqualification for bias or prejudice was not permitted." *Id.* (citing *Clyma v. Kennedy*, 29 A. 539 (1894)). "'[T]he law will not suppose a possibility of bias or favour in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.'" *Id.* (quoting 3 W. Blackstone, Commentaries 361). "[O]nly in the most extreme of cases would disqualification on [the basis of bias and prejudice] be constitutionally required." *Id.* at 821.

Although the Constitution generally does not require disqualification on the basis of bias and prejudice, federal and state statutes may require a judge to recuse him or herself. Section 455 of Title 28 of the United States Code requires a federal judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned" or "[w]here he has a personal bias or prejudice concerning a party. . . ." Prejudice or bias in this context means "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it rests upon knowledge that the subject ought not possess . . . , or because it is excessive in degree . . . ." *Liteky v. United States*, 510 U.S. 540, 550 (1994). "Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Id.* at 551.

### 2.       The Ohio Court Decision

Ohio's Eighth District Court of Appeals denied Petitioner's due process claim based on Judge Coleman's alleged bias and/or appearance of bias. For the purposes of its decision, the court assumed that Judge Coleman had in fact received FBI documents relating to Petitioner's involvement with the Afro-Set. The court relied on the Ohio Supreme Court's decision in *Maloney v. Maxwell*, 186 N.E.2d 728 (1962), which held that a judge who formerly prosecuted a prior conviction of the defendant was not disqualified from presiding over the defendant's trial. Although *Maloney* did not explain its holding, it cited to a Georgia case, *Wood v. Clarke*, 4 S.E.2d 659 (Ga. 1939). *Wood* held that because disqualification under a Georgia statute could be waived, disqualification was not grounds for habeas relief. *Id.* at 660. *Wood* did not contain any constitutional analysis. *Id.*

### 3.       Petitioner is Not Entitled to Habeas Relief on This Ground

Petitioner is not entitled to habeas relief based on Judge Coleman's actual and/or appearance of bias. Although the Ohio court's analysis was inadequate in that it failed to identify or apply the relevant federal law, its decision was not contrary to clearly established federal law because it arrived at the conclusion compelled by federal law. *See Aetna Life Ins. Co.,* 475 U.S. at 824. Petitioner has not identified any interest, pecuniary or otherwise, that would tempt the average man with Judge Coleman's potential knowledge of Petitioner to improperly rule against Petitioner. *Id.* Therefore, the Due Process Clause did not require Judge Coleman to recuse himself.

Furthermore, even if bias or prejudice were grounds for a due process claim, there is no evidence that Judge Coleman was biased or prejudiced against Petitioner. *Corbett v. Bordenkircher*, 615 F.2d 722, 723-24 (6th Cir. 1980) (holding that there is no *per se* rule that judges must disqualify themselves where they prosecuted the defendant in an earlier proceeding but that Defendant must make a showing of actual bias)*; Jenkins v. Bordenkircher,* 611 F.2d 162, 167 (6th Cir. 1979) (same). As the Supreme Court explained in *Liteky*, opinions held by judges as a result of what they learned in earlier proceedings do not qualify as bias or prejudice. 510 U.S. at 551; *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002) (applying *Liteky*'s definition of bias or prejudice to a due process claim against a state court judge). The information Judge Coleman received from the FBI is akin to information learned in earlier proceedings. Although Petitioner argues that such information is

different because court proceedings are generally public whereas this information was classified, we remain unconvinced. At least in the context of this case, there is no reasoned basis for assuming that information obtained in secret as opposed to information obtained in public is more likely to create prejudice or bias. Additionally, the factual predicate for this argument is flawed. Judges often obtain confidential information about defendants at trials that is never shared with the public.

Similarly, Judge Coleman's evidentiary trial rulings against Petitioner do not evidence bias. As the Supreme Court explained in *Liteky*, "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance on any extrajudicial source; and can only in the rarest circumstance evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal." 510 U.S. at 555 (interpreting 28 U.S.C. § 455(a), which requires federal judges to recuse themselves for personal bias and prejudice). Therefore, we affirm the decision of the district court denying Petitioner habeas relief on this claim.

## F.    *Brady* Violation

Petitioner argues that the State of Ohio withheld the following exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963):

1.    Ricky Moore, the brother of Archie Moore, informed the police that he received a telephone call from a woman residing across the street from the murder scene, who stated that she saw "a mail truck pull into the field, dump something, and shoot it."

2.    Larry Moore, the brother of Archie Moore, informed the police that he had heard three men "chased his brother behind the post office and killed him, after one of the males shot him once in front of Swansons."

According to Petitioner, these statements could have been used to impeach the Moore brothers and bolster his claim of innocence. The Eighth District Court of Appeals determined that there was no reasonable probability that the above information would have changed the outcome of the trial, and thus there was no *Brady* violation. The Eighth District Court's determination that the State's withholding of the Moore brothers' statements did not prejudice Petitioner was not an unreasonable application of *Brady*. Therefore, we affirm the decision of the district court, denying Petitioner habeas relief on his *Brady* claim.

### 1.    Clearly Established Federal Law

"*Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or innocence.'" *United States v. Bagley*, 473 U.S. 667, 675 (1985). Evidence is favorable to the accused if it exculpates him or enables him to impeach witnesses. *Id.* at 676. Evidence is material to guilt or innocence "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682.

### 2.    The Ohio Court Decision

The Eighth District Court of Appeals denied Petitioner's *Brady* claim, holding that the information allegedly withheld was neither exculpatory nor sufficiently material to cause Petitioner prejudice.

We conclude that the trial court was correct in its determination that the attached exhibits were not exculpatory, thus Williams' *Brady* claims were meritless. First, Williams relies on Shaughnessy's affidavit stating the state did not disclose to him a portion of the exhibits attached to the petition. It does not matter that Shaughnessy was not privy to those documents, if they are not exculpatory. Secondly, the exhibits at issue were obtained from the FBI and the Cleveland Police Department. They consist of police reports, investigative interviews, depositions, etc. The content of these documents does not reveal how, if at all, the result of the trial would have been different, had the state provided them to Williams. Williams' second assignment of error is overruled.

(J.A. at 5848.)

### 3.      Not Grounds For Habeas

The district court did not err in denying Petitioner habeas relief on his *Brady* claim. Assuming that the Moore brothers' statements were favorable to the accused, Petitioner's claim still fails because the statements were not material. In light of the substantial evidence of Petitioner's guilt – in particular the testimony of Darby and Berry – there is no reasonable probability that the jury would have found Petitioner innocent of murder for hire.

## G.      Cumulative Trial Error

Finally, Petitioner alleges that the cumulative effect of the errors at trial rendered his trial fundamentally unfair in violation of due process. If this were an issue of first impression in this Circuit, we might be inclined to agree. The Supreme Court has repeatedly stated that fundamentally unfair trials violate due process, *see, e.g., Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (quoting *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967)), and common sense dictates that cumulative errors can render trials fundamentally unfair. Additionally, the Supreme Court has expressly cumulated prejudice from distinct errors under the Due Process Clause. *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973) ("We need not decide, however, whether this error alone would occasion reversal since Chambers' claimed denial of due process rests on the ultimate impact of that error when viewed in conjunction with the trial court's refusal to permit him to call other witnesses."). Nonetheless, the law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue. *See Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) (discussing cumulated evidentiary errors). No matter how misguided this case law may be, it binds us. *Turker*, 157 F.3d at 457-58. Accordingly, we affirm the district court's dismissal of Petitioner's cumulative error claim.

In summary, we find that Petitioner's death sentence was imposed in violation of the United States Constitution. Petitioner's trial attorney rendered constitutionally ineffective assistance of counsel by failing to investigate and present mitigation evidence. We reject Petitioner's remaining contentions, however, and hold that his conviction was not imposed in violation of the United States Constitution.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the decision of the district court granting Petitioner a conditional writ of habeas corpus and vacating his sentence of death but denying Petitioner the writ as to his conviction.

---

**CONCURRENCE**

---

SILER, Circuit Judge, concurring. I concur in the majority opinion's conclusion to affirm the decision of the district court in granting Williams a conditional writ of habeas corpus on his sentence only and denying the writ on the conviction. However, because I think that it is unnecessary to rule on other issues which have been raised, I file this separate concurring opinion.

In order to get to the sentencing issues, it is appropriate for this court to rule on the issues which affect the conviction itself. Thus, I concur specifically on the grounds that Williams is not entitled to habeas corpus relief based on his claims that the trial judge was biased and that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). I also agree that the issue of the admissibility of Kim Berry's testimony in rebuttal was procedurally defaulted in the state court. Finally, I concur in the conclusion of the majority that the Ohio Supreme Court's determination that the combined effect of cumulative evidentiary errors was harmless was not an unreasonable application of clearly established Supreme Court law. The majority is correct that the conviction should stand, because those are the only issues which are before this court concerning the conviction.

Then, I further agree with the majority that trial counsel was ineffective during the sentencing phase of the trial. Counsel essentially did nothing during the mitigation portion of the trial, except to make a brief closing argument and to allow Williams to make an unsworn statement. It is regretful that this case has gone on so long that the original counsel is now dead, so the court has no way of knowing why he failed to investigate certain matters or to interview certain witnesses. His representation fell below the standards required in *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); and *Williams v. Taylor*, 529 U.S. 362 (2000). Finding that a writ should issue on the grounds of ineffective assistance of counsel at the mitigation stage alone, I would not rule on the other issues discussed by the majority for the reasons stated below. It is totally unnecessary for the resolution of this case.

First, I would not make the determination that appellate counsel was ineffective at the state level by raising the question of ineffective trial counsel on direct appeal. Truly, matters outside of the record could not have been considered by the Ohio courts on direct appeal. *See State v. Cooperrider*, 448 N.E.2d 452, 454 (Ohio 1983). However, the question of ineffective assistance of appellate counsel was not a part of the certificate of appealability and was never asserted by the parties. The State has not raised the issue of procedural default on the issue of ineffective assistance of trial counsel, so it is unnecessary to discuss this at all.

Second, on the issue of whether the combined evidentiary errors at trial could be cumulated to violate due process, I feel it is unnecessary to make such a ruling, since we have already granted the writ for ineffective assistance of counsel. As the majority correctly points out, there are several cases from this court which state that the Supreme Court has not expressly held that cumulative errors may violate due process. *See*, *e.g.*, *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Obviously, at a retrial in the sentencing phase of this case, the trial court would follow the decision by the Ohio Supreme Court previously that some of this evidence should not have been admitted.

Third, I also see no reason for this court to rule on the legality of the instructions in the case. Even if we should get to this question, I concur with the majority that the unanimous-life instruction did not violate the Eighth Amendment. *See Jones v. United States*, 527 U.S. 373, 382 (1999); *Buell v. Mitchell*, 274 F.3d 337, 356 (6th Cir. 2001). On the second issue involving instructions, claiming that the acquittal-first instruction was erroneous, I would stop with the conclusion that the challenge

to that instruction was procedurally defaulted. Although the majority exhaustively analyzes this instruction, there is a dispute within this circuit as to whether some of the prior decisions on the acquittal-first instructions are *dicta*. *See, e.g.*, *Scott v. Mitchell*, 209 F.3d 854, 876 (6th Cir. 2000). The recitation of all this law again appears to be *dicta* here, and it is not necessary to the resolution of this case.

In summation, although I concur in the district court's granting of the writ of habeas corpus for ineffective assistance of counsel at the sentencing stage of the trial, and I would uphold the decision of the district court in affirming the conviction, I do not join the majority opinion on certain other issues which I deem unnecessary for the resolution of this matter.